[Civ. No. 54444. First Dist., Div. One. Apr. 6, 1983.]

FANELLI, ANTUZZI, BONACORSI PAINTING, INC.,
Cross-complainant and Appellant, v.
SANTA CLARA UNIFIED SCHOOL DISTRICT,
Cross-defendant and Respondent.

**COUNSEL**

Anastasi, Vogel & Nielsen and Phillip J. Nielsen for Cross-complainant and Appellant.

Selby Brown, Jr., County Counsel, and Richard K. Abdalah, Deputy County Counsel, for Cross-defendant and Respondent.

**OPINION**

**THE COURT.\***—Fanelli, Antuzzi, Bonacorsi Painting, Inc. (FAB), cross-complainant below, appeals from a judgment in favor of cross-defendant Santa Clara Unified School District (District), on FAB's cross-complaint, entered upon District's motion for summary judgment. We conclude that District was entitled to summary judgment; accordingly we affirm.

The Labor Code requires (with exceptions not relevant here) that workers employed on public works be paid not less than "the general prevailing rate of per diem wages for work of a similar character in the locality" (Lab. Code, §§ 1771, 1774) as determined by the Director of the Department of Industrial Relations (*id.*, § 1770; cf. *id.*, §§ 1773, 1773.1, 1773.4). A public works contractor who pays less than the prevailing wage rates will be liable to the worker for the difference and to the public entity for a penalty; the Division of Labor Standards Enforcement (DLSE) is empowered to sue for the amounts and penalties due. (*Id.*, § 1775.) The body awarding the contract for public work is required to call these provisions to the attention of bidders and to specify or to provide copies of the prevailing wage rates. (*Id.*, §§ 1773.2, 1775.)

DLSE sued FAB, District, and two bonding companies on behalf of certain of FAB's employees, alleging that FAB had paid less than prevailing wage rates on certain public works performed for District and seeking amounts and penalties allegedly due. The theory of the complaint was that FAB was primarily liable; against District the complaint sought simply to recover funds withheld by District (cf. *id.*, §§ 1726, 1727) from payments otherwise due FAB, and the two bonding companies were sued as sureties. The complaint was ultimately dismissed as to District.

FAB cross-complained against District for "indemnity, unjust enrichment, negligence, fraud, and to recover funds held by stop notice," alleging that District had failed to comply with the Labor Code provisions for notice to bidders, and further alleging that District was aware before the work was done that FAB would not be paying "prevailing wage rates" but that District intentionally and with intent to deceive FAB and to take advantage of FAB's low bid, or negligently, failed to call the fact to FAB's attention.

District moved for summary judgment on the cross-complaint; its motion was granted and judgment was entered. This appeal followed.

■ A motion for summary judgment must be directed to issues raised by the pleadings, and may be granted only if the moving party's showing would be

*Before Racanelli, P. J., Elkington, J., and Newsom, J.

sufficient to sustain a judgment in its favor *and* the responding party has raised no triable issue as to any fact material to the moving party's showing. These are questions of law, subject to reassessment de novo on appeal. (*LaRosa* v. *Superior Court* (1981) 122 Cal.App.3d 741, 744-745 [176 Cal.Rptr. 224].) FAB contends that as a matter of law District has not made a sufficient showing and that in any event FAB has raised triable issues of material fact.

■ To prevail District was required either to negate a necessary element of FAB's case or to state a complete defense. (*Frazier, Dame, Doherty, Parrish & Hanawalt* v. *Boccardo, Blum, Lull, Niland, Teerlink & Bell* (1977) 70 Cal.App.3d 331, 338 [138 Cal.Rptr. 670].) To do so it relied on assertions that it had sufficiently complied with the notice requirements of Labor Code sections 1773.2 and 1775. Section 1773.2 provides that: "The body awarding any contract for public work, or otherwise undertaking any public work, shall specify in the call for bids for the contract, and in the bid specifications and in the contract itself, what the general rate of per diem wages is for each craft, classification or type of workman needed to execute the contract.

"In lieu of specifying the rate of wages in the call for bids, and in the bid specifications and in the contract itself, the awarding body may, in such call for bids, bid specifications, and contract, include a statement that copies of the prevailing rate of per diem wages are on file at its principal office, which shall be made available to any interested party on request. The awarding body shall also cause a copy of the determination of the director of the prevailing rate of per diem wages to be posted at each job site."

Section 1775 provides in pertinent part that: "The contractor shall, as a penalty to the state or political subdivision on whose behalf the contract is made or awarded, forfeit twenty-five dollars ($25) for each calendar day, or portion thereof, for each workman paid less than the prevailing rates as determined by the director for such work or craft in which such workman is employed for any public work done under the contract by him or by any subcontractor under him. The difference between such prevailing wage rates and the amount paid to each workman for each calendar day or portion thereof for which each workman was paid less than the prevailing wage rate shall be paid to each workman by the contractor, and the body awarding the contract shall cause to be inserted in the contract a stipulation that the provisions of this section will be complied with."

District submitted the declarations of District employees Callejon and Ernst.

Callejon declared that his duties included preparation and administration of public works contracts; that District had received bids on the public work in question on May 15, 1980, and that FAB had been the only bidder; that FAB's agent, Fanelli, had executed the public work contract on June 16, 1980; and that in July 1980, pursuant to a complaint that FAB was not paying prevailing rates, Callejon went to the job site and received the assurance of Fanelli or his agent "that this accusation was untrue and that prevailing wages were being paid."

To his declaration Callejon attached copies of pages from the notice of bid, from the contract, and from a set of general conditions which had been incorporated in both. The notice of bid paraphrased the prevailing-wage-rates provisions of the Labor Code at some length, and expressly stated that the prevailing wage rates "shall not be less than the stipulated rates contained in a schedule thereof . . . which is now on file in the office of the Board of Education and by reference incorporated and specified herein and made a part hereof, copies of which are available at said office of said Board, to any interested party upon request." The notice of bid was ultimately incorporated into the contract as part of the contract documents. The contract was expressly made subject to "the following provisions of law," setting out a list which included "Secs. 1770 to 1781, inclusive, Labor Code of State of California"; the contract further provided that the "Contractor further agrees that no person employed in the performance of said work . . . shall be paid less than the prevailing rate of per diem wages for work of a similar character in the locality in which said work is performed . . . ." The general conditions stated that all contractors and subcontractors would be required to conform to California labor laws "including the prevailing wage scales . . . ."

Ernst declared that he was the District's purchasing agent, that his duties included making prevailing wage rate schedules available to any interested party, and that since February 1980, such schedules had been available at the District offices.

We are satisfied that this showing demonstrates prima facie that District had discharged any obligation, imposed upon it by the Labor Code or arising out of the relationship of the parties, to inform FAB in advance of the requirement that it pay prevailing wage rates. On this showing the District substantially complied with each code provision arguably designed to give FAB advance notice of the prevailing wage rate requirements, and its compliance would negate FAB's allegations that the District intentionally or negligently misled FAB as to the requirements. The showing that FAB's was the only bid would tend to vitiate the allegation that District was aware FAB would pay less than prevailing rates.

FAB correctly points out that District has *not* shown that it caused a copy of the current prevailing wage rate schedule to be posted at each job site as required by section 1773.2: FAB argues that the provision is "of crucial import" and that "[t]he purpose of this section is to put potential contractors on notice, before bids are submitted, of the requirement of paying prevailing wage rates." We disagree: It is clear to us that the Legislature used the term, "job site," in section 1773.2, in the common parlance to mean a site at which work had actually begun (presumably considerably *after* the bidding process was complete) and that the purpose of the provision is to notify the *workers* at the site (for whose benefit the prevailing wage rate provisions are intended) of the rates to which they are entitled. The history of the provision supports our construction: As initially enacted in 1968 as part of section 1773, the provision required that "the *contractor* shall post a copy thereof at each jobsite." (Stats. 1968, ch. 699, § 1, italics added.) In our view subsequent amendments have not changed the substance or the intent of the provision. It is apparent from Callejon's declaration that the fact prevailing wage rates were not being paid came to light quite promptly, and thus that the purpose of the provision was served notwithstanding District's apparent failure to comply with it. In light of all the notice FAB received in various forms, we cannot accept FAB's contention that it was District's failure to post the job site which led FAB to pay less than prevailing rates; in any event we conclude that in these circumstances District was not required to show that it had posted the job site in order to state a complete defense.

The remaining question is whether FAB raised a triable issue as to any fact material to District's showing. Plainly it did not. FAB submitted the declaration of one Calvin, the owner of another painting company, who stated that in September 1980, he went to the District office and asked to see the prevailing wage rate schedule relevant to the job FAB had bid and was told "that an updated schedule was not available." Calvin's declaration tends to raise an issue of fact with Ernst's declaration, but the issue would not be *material* to District's showing: the advice Calvin assertedly received on September 10 could have had no impact on FAB's performance of a contract bid in May and signed in June, or on wages the last of which were allegedly paid on September 3. FAB also filed a declaration by Fanelli, whose statement raises no issue with District's showing. FAB assigns weight to Fanelli's recitation that "[i]n July of 1980, an employee of FAB, Chris Bonacorsi, reported to me that Ron Meyers, an inspector for Santa Clara Unified School District, stated to him that FAB had underbid the job in question by $80,000.00. This causes me to believe that Santa Clara Unified School District knew that FAB was not paying the 'prevailing rate of per diem wages' . . . ." Aside from the weakness of Fanelli's inference, the report of Meyers' statement (as attributed to Bonacorsi) was in the nature of hearsay and hence would not have been admissible evidence (cf. Code Civ.

Proc., § 437c): Accordingly it should be disregarded. (Cf. *Craig Corp.* v. *County of Los Angeles* (1975) 51 Cal.App.3d 909, 915 [124 Cal.Rptr. 621].)

The judgment is affirmed.