[No. A034306. First Dist., Div. One. June 11, 1987.]

JOHN R. WATERS, Plaintiff, Cross-defendant and Respondent, v.
DIVISION OF LABOR STANDARDS ENFORCEMENT,
Defendant, Cross-complainant and Appellant;
JAMES R. MATSON et al., Cross-defendants and Respondents.

636

Charlotte C. Danforth for Defendant, Cross-complainant and Appellant.

Mathews & Mathews and Francis B. Mathews for Plaintiff, Cross-defendant and Respondent.

No appearance for Cross-defendants and Respondents.

---

OPINION

**ELKINGTON, Acting P. J.**—Defendant and cross-complainant Division of Labor Standards Enforcement (Division), a division of the state's Department of Industrial Relations, appeals from the judgment entered in favor of plaintiff and cross-defendants John R. Waters, James R. Matson, and the Ohio Casualty Insurance Company, an Ohio Corporation, subsequent to a one-day court trial.

For the reasons stated, we affirm in part and reverse in part.

The appeal presents issues pertaining to those sections of the Labor Code (Code) requiring that the general prevailing rate of per diem, holiday, and overtime wages be paid to workers employed on public works. (Lab. Code, § 1770 et seq.; all statutory references are to the Labor Code unless otherwise stated.) Briefly stated, the Code requires the Director of the Department of Industrial Relations (Director) to determine the general prevailing wage rate in the locality in which the public work is to be performed according to a statutorily defined method. (§§ 1770; 1773.) The public entity awarding the contract for a public work is then required to obtain the prevailing wage from the Director (§ 1773) and specify that rate in the call for bids, the bid specifications, and the contract. (§ 1773.2.) Alternatively, the awarding body may state in its call for bids, bid specifications, and in the contract that the prevailing per diem wage rate is on file in its principal office. (§ 1773.2.) A public works contractor who pays less than the prevailing rate, is liable to the worker for the difference and is subject to a $25 per day penalty for each underpaid worker. (§ 1775.) The contractor is similarly responsible for any underpayment made by his subcontractors, although he may withhold sufficient sums from the subcontractor to cover any penalties. (§ 1729.)

In this matter, the City of Willits (Willits) published a notice for bids in September 1982 for the construction of a gymnasium. The notice specified that, "[p]ursuant to Section 1773 of the Labor Code, the general prevailing rate of per diem wages and the general prevailing rate for holiday and overtime work in the locality for each craft classification or type of workers needed to execute the contract is applicable to this project." The notice,

however, neither stated the prevailing rates nor included a statement that the rates were on file in the city's main office.

John R. Waters, a licensed California contractor, was the low bidder and entered into a contract with Willits. Section 12 of the contract required the contractor to pay wages in an amount "not less than the 'Wage Rates' referred to in the 'Notice to Contractors.'" Both the contract and the specifications failed to state expressly the prevailing wage rates or to include a statement that the rates were on file in any city office.

Waters subcontracted a portion of the carpentry work to James Matson, who hired three workers at hourly rates of $12 and $15. According to Waters's uncontradicted testimony, he understood section 1773 to mean that the Director established the prevailing wage rate for the locality in which the public work was to be performed, but it was incumbent upon the public entity awarding the contract to convey that information to the contractor. Because the prevailing wage rate for Willits was not stated in the contract documents on file at the city's offices, or published in the local newspapers, Waters investigated the wage rates that were being paid at a local, federally funded public work. He discovered that the prevailing wage rates for carpenters working on that project had been determined by the Director to be $7.76 per hour.

Waters also consulted with the city architect overseeing the gymnasium project. The architect suggested a wage of under $9 per hour. Based on that suggestion as well as his investigation of the wage rate being paid at the federally funded project, Waters concluded that the wage rate Matson was paying to the three workers exceeded the prevailing wage rate for Willits.

In fact, however, the Director had set the prevailing wage rate for carpenters in the Willits area at $24.025 per hour. Upon a complaint from one of the carpenters subsequent to the completion of the gymnasium, the Division determined that the three employees had been underpaid in the total amount of $18,079.33 and levied a penalty on Waters in the amount of $5,375. Pursuant to a stop notice filed on April 15, 1983, Willits withheld a total amount of $23,454.33. Waters subsequently posted a release bond issued by the Ohio Insurance Company, and filed suit for monies owed. The Division cross-complained.

The trial court entered judgment in favor of Waters in the amount of $5,375 and exonerated the release bond. It further ordered that the Division take nothing under its cross-complaint. In its tentative decision, the court determined that Waters and the subcontractor had done "everything they could do to comply with the law and the direction of the owner."

On appeal, the Division contends that the contract documents sufficiently alerted Waters to the requirement that he pay the general prevailing wage rate for Willits. Because Waters admittedly knew that the Director was responsible for establishing the prevailing wage rate, the Division contends, without citing any authority, that it was incumbent upon Waters to check with the Department of Industrial Relations to find out precisely what wage rate had been established for Willits, or, alternatively, to check with the city manager who was the signatory to the agreement on behalf of Willits. The Division therefore concludes that Waters acted unreasonably in limiting his inquiry to checking the wages that had been approved for the local federally financed project and to consulting with the city architect.

Waters counters that Willits's failure to comply with the disclosure requirements of section 1773.2 estops the Division from recovering. Waters further contends that the contract documents establish the architect as Willits' representative with respect to this project; Waters' reliance upon the architect's advice on the appropriate wage rate therefore was reasonable.

We find Waters's arguments persuasive with respect to the imposition of the penalty. However, we do find that he is liable to the carpenters for the difference between the prevailing wage rate and the amount actually paid.

█ Considering the latter issue first, the contract signed by Waters, as we noted previously, specifically mandated that he and his subcontractors pay their employees the prevailing wage rate. When a contractor freely enters into an agreement for a public work in which he stipulates to pay the prevailing wage rate as determined by the Director pursuant to section 1773, he will be required to comply with the terms of his contract. (Cf. *O. G. Sansone Co.* v. *Department of Transportation* (1976) 55 Cal.App.3d 434, 455 [127 Cal.Rptr. 799].)

We therefore find that the lower court erred in holding otherwise.

█ We do find, however, that the superior court correctly decided the penalty issue.

Section 1773 provides in pertinent part: *"The body awarding* any contract for public work ... *shall obtain* the general prevailing rate of per diem wages and the general prevailing rate for holiday and overtime work in the locality in which the public work is to be performed for each craft, classification or type of workman needed to execute the contract *from the Director of the Department of Industrial Relations....*" (Our italics.)

Section 1773.2 provides: *"The body awarding* any contract for public work, or otherwise undertaking any public work, *shall specify* in the call for

bids for the contract, and in the bid specifications and in the contract itself, *what the general rate of per diem wages is* for each craft, classification or type of workman needed to execute the contract.

"*In lieu of specifying the rate of wages in the call for bids, and in the bid specifications, and in the contract itself, the awarding body may,* in such call for bids, bid specifications, and contract, *include a statement that copies of the prevailing rate of per diem wages are on file at its principal office,* which *shall be made available* to any interested party on request. The awarding body shall also cause a copy of the determination of the director of the prevailing rate of per diem wages to be posted at each job site." (Our italics.)

By the express terms of the statutes, the Legislature has imposed upon the awarding body, in this case Willits, the responsibility for providing advance notice to the contractor that wages must be paid in accordance with the general prevailing rate, as well as informing the contractor expressly what those rates are or where he or she may obtain that information. (See *Fanelli, Antuzzi, Bonacorsi Painting, Inc.* v. *Santa Clara Unified School Dist.* (1983) 141 Cal.App.3d 686, 690 [190 Cal.Rptr. 515].)

In *Fanelli, supra,* we determined that the awarding body had substantially complied with the notice provisions because the call for bids expressly stated that the wage paid must not be less than the prevailing wage rate, that the schedule of wages were on file in the awarding body's office, and the contract incorporated by reference the call for bids. Further, the wage schedule was in fact on file in the awarding body's office and therefore accessible to the contractor. (141 Cal.App.3d at p. 690.)

In the matter before us, however, the call for bids as well as the contract documents failed to specify what were the prevailing rates for Willits or, alternatively, that those rates were on file in the city's offices. Under these circumstances, Willits, as the awarding body, did not substantially comply with the statutory notice provisions.

The contract documents, however, did alert Waters, as he so testified, that the wages must not be less than the prevailing general rate.

However, pursuant to section 2.2.2 of the specifications, which were expressly made a part of the contract documents by section 1 of the agreement and section 1.1.1 of the specifications, the architect was appointed Willits' representative "during construction and until final payment is due," with authority to act on the city's behalf to the extent provided by the contract documents. Section 2.2.7 of the specifications provided in part that

"[t]he Architect will be the interpreter of the requirements of the Contract Documents ..." and section 2.2.9 directed that all "[c]laims, disputes and other matters in question ... relating to the ... interpretation of the Contract Documents shall be referred intially [*sic*] to the Architect for decision. ..."

In light of the contractual language, Waters acted reasonably in consulting the architect regarding the prevailing general wage rate. And where a plaintiff in good faith relies on the defendant's negligent misrepresentation, "a plaintiff is not barred unless his conduct, in the light of his own information and intelligence, is preposterous and irrational." (*Hartong* v. *Partake, Inc.* (1968) 266 Cal.App.2d 942, 965 [72 Cal.Rptr. 722]; *Van Meter* v. *Bent Constr. Co.* (1956) 46 Cal.2d 588, 595 [297 P.2d 644].) Here, Waters investigated the wage rate that was being paid at another local public work project. Given that the rate was equal to or less than that suggested by the city architect, Waters's conduct in relying on the architect's advice cannot be characterized as "preposterous" or "irrational."

Under these circumstances, we find that the state, on behalf of Willits (see § 1775), is barred under the doctrine of equitable estoppel from imposing a penalty on Waters.

"Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." (*Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245].)

Here, Willits was under a statutory duty to know the prevailing wage rate for the community and to impart that information to Waters. Waters had the right to rely upon and believe the information given to him by the architect, who was deemed by the contract to be Willits's representative. Waters was ignorant of the prevailing wage rate for Willits and he relied upon the representations made to him by the architect to his detriment.

The doctrine of equitable estoppel may be applied against a governmental entity unless its application "would result in the nullification of a strong rule of policy adopted for the benefit of the public." (*Strong* v. *County of Santa Cruz* (1975) 15 Cal.3d 720, 725 [125 Cal.Rptr. 896, 543 P.2d 264].) We discern no "strong rule of policy adopted for the

benefit of the public" which would penalize one who in good faith attempts to comply with law. The purpose behind the imposition of the penalty pursuant to section 1775 is to ensure compliance with the prevailing wage rate requirement. (*O. G. Sansone Co.* v. *Department of Transportation, supra,* 55 Cal.App.3d at p. 447.) Where, as is the case here, the contractor makes a good faith effort to comply with that obligation, an effort that includes consulting with the awarding body's representative, we opine that applying the doctrine of equitable estoppel would not abrogate the purpose of the penalty.

That portion of the judgment denying the carpenters the difference between the prevailing wage rate and the rate actually paid is reversed. The judgment is affirmed in all other respects. Each party to bear its own cost on appeal.

Newsom, J., and Holmdahl, J., concurred.