[No. D009272. Fourth Dist., Div. One. May 22, 1990.]

DIVISION OF LABOR STANDARDS ENFORCEMENT, Plaintiff and Appellant.
ERICSSON INFORMATION SYSTEMS, INC., et al., Defendants and Respondents.

**COUNSEL**

Stuart M. Kaye for Plaintiff and Appellant.

Gibson, Dunn & Crutcher, William D. Claster, J. Kevin Lilly, Palecek, Nolta & Scakall, Palacek & Nolta and Franklin L. Nolta for Defendants and Respondents.

Stephen P. Morrell, James E. Holst and George L. Marchand as Amici Curiae on behalf of Defendants and Respondents.

**OPINION**

**WORK, J.**—The Division of Labor Standards Enforcement, Department of Industrial Relations, State of California (hereafter DLSE or department) appeals from a summary judgment in favor of contractor Ericsson Information Systems, Inc., its bonding company Federal Insurance Company, and subcontractor Global Telecon, Ltd. (hereafter sometimes referred to collectively as Ericsson or the contractor), after the department sued to enforce payment of prevailing wages and to impose a penalty under Labor Code[1] section 1770 et seq., for a public works project completed by the contractor for the University of California of San Diego (hereafter UCSD or the university).[2] We hold the university is subject to the public works prevailing wage laws designed to protect private sector employees on public works which do not involve the internal affairs of the university. Further, we hold

---

[1] All statutory references are to the Labor Code unless otherwise specified.

[2] Respondents and the university (as amicus curiae) make essentially the same arguments on appeal, and thus for the most part we refer to them collectively as "the contractor" for purposes of convenience.

the hindsight determination after completion of the project that no classification had been published by the department to precisely cover the employees on the project, did not, as a matter of law for purposes of summary judgment, excuse the contractor's expressly assumed obligation to pay the workers prevailing wages. The judgment is reversed.

I

■ On appeal from a summary judgment, we evaluate whether there was no triable issue of fact and the moving party was entitled to judgment as a matter of law. (*Scroggs* v. *Coast Community College Dist.* (1987) 193 Cal.App.3d 1399, 1401 [239 Cal.Rptr. 916].) We resolve doubts as to the propriety of granting the motion in favor of the party opposing the motion. (*Dillashaw* v. *Ayerst Laboratories, Inc.* (1983) 141 Cal.App.3d 35, 38 [190 Cal.Rptr. 68].)

The contractor (and the university in an amicus curiae brief) argue the summary judgment was proper since (1) UCSD is not covered by the prevailing wage laws, and (2) alternatively, no wage rate had been specified for the UCSD project, thus making the prevailing wage laws inapplicable. We reject both arguments.

We summarize the statutory provisions and department regulations governing public works' prevailing wage requirements.

Section 1771 requires workers employed on public works be paid not less than the general prevailing per diem rate for work of a similar character in the locality.[3] The director of the department (hereafter director) determines the general prevailing rate according to statutory standards. (§ 1770.)[4] The body awarding the public work contract is required to obtain from the director the prevailing rate for each type of worker needed to execute the contract. (§ 1773.)[5] Additionally, the department's regulations provide that

---

[3] Section 1771 states: "Except for public works projects of one thousand dollars ($1,000) or less, not less than the general prevailing rate of per diem wages for work of a similar character in the locality in which the public work is performed, and not less than the general prevailing rate of per diem wages for holiday and overtime work fixed as provided in this chapter, shall be paid to all workers employed on public works.

"This section is applicable only to work performed under contract, and is not applicable to work carried out by a public agency with its own forces. This section is applicable to contracts let for maintenance work."

[4] Section 1770 states in part: "The Director of the Department of Industrial Relations shall determine the general prevailing rate of per diem wages in accordance with the standards set forth in Section 1773, and the director's determination in the matter shall be final except as provided in Section 1773.4."

[5] Section 1773 states in part: "The body awarding any contract for public work, or otherwise undertaking any public work, shall obtain the general prevailing rate of per diem wages

where wage rates for certain types of workers are not published in the director's general prevailing wage determinations, a special determination request should be made by the awarding body at least 45 days before the project bid advisement date. (Cal. Code Regs.,[6] tit. 8, §§ 16100, subd. (b)(2)(B), 16202, subd. (a).)

The awarding body must specify the general rate for each type of worker in the call for bids for the contract, in the bid specifications, and in the contract itself. (§ 1773.2.) Alternatively, the awarding body may in the call for bids, bid specifications, and contract include a statement that copies of the prevailing rate are on file at its principal office and available upon request. (*Ibid.*) The awarding body is also required to post a copy of the prevailing rate at each jobsite. (*Ibid.*)[7]

The department's regulations permit any interested party to petition the director as provided in section 1773.4 of the Labor Code and section 16302 of the regulations if an awarding body does not specify the prevailing wage rate. (Cal. Code Regs., tit. 8, § 16202, subd. (b).) Section 1773.4 of the Labor Code and section 16302 of the regulations state the procedure for review of rate determinations: that is, within 20 days after an awarding body begins advertising for a call for bids, any prospective bidder, representative of a type of worker involved, or the awarding body may petition the director to review the determination of any rate. Section 16202, subdivision (b) of the regulations states, "[t]he Labor Commissioner may, prior to the letting of the bid, request such a determination of the Director."

Under section 16204, subdivision (a)(1) and (5) of the regulations, the director's determinations are effective 10 days after issuance, and it is the responsibility of the awarding body to ensure the determination is correct.

---

and the general prevailing rate for holiday and overtime work in the locality in which the public work is to be performed for each craft, classification or type of workman needed to execute the contract from the Director of the Department of Industrial Relations."

In determining the rates, section 1773 instructs the director to consider the local rates established under collective bargaining agreements and on federal public works, and if such rates do not constitute actual prevailing rates in the locality, the director should consider data from labor organizations and employers.

[6] All subsequent references to the California Code of Regulations shall be as "regulations."

[7] Section 1773.2 states: "The body awarding any contract for public work, or otherwise undertaking any public work, shall specify in the call for bids for the contract, and in the bid specifications and in the contract itself, what the general rate of per diem wages is for each craft, classification or type of workman needed to execute the contract.

"In lieu of specifying the rate of wages in the call for bids, and in the bid specifications and in the contract itself, the awarding body may, in such call for bids, bid specifications, and contract, include a statement that copies of the prevailing rate of per diem wages are on file at its principal office, which shall be made available to any interested party on request. The awarding body shall also cause a copy of the determination of the director of the prevailing rate of per diem wages to be posted at each job site."

Section 1774 provides that "[t]he contractor to whom the contract is awarded, and any subcontractor under him, shall pay not less than the specified prevailing rates of wages to all workmen employed in the execution of the contract." Under former section 1775, the contractor must pay a per diem penalty to the state or political subdivision on whose behalf the contract is made, of $25 for each worker (now $50) "paid less than the prevailing rates as determined by the director," and must pay the worker the difference between the amount he was paid and the prevailing rate.[8] The awarding body must include a contract provision that it will comply with section 1775. Further, section 1775 provides that in an action to recover the penalties and amounts due, no issue shall be determined other than the liability of the contractor for the penalties and amounts due, and the burden is on the contractor to establish the penalties and amounts demanded are not due.

Under section 1777, any representative of the state or any political subdivision who "wilfully violates any provision of this article, . . . is guilty of a misdemeanor."

## II

The presented facts are as follows.

The contract between UCSD and Ericsson, for the installation of a telephone system, called for the payment of prevailing wages, stating the department had ascertained the rate for the type of workers needed to execute the agreement; a schedule of the wages would be posted at the jobsite and was on file at specified university offices; the schedule was part of the agreement as if fully set forth; Ericsson would pay not less than the prevailing rate and require the same of any subcontractor; and if any worker was paid less than the specified rate, Ericsson would pay a penalty (as prescribed in the Lab. Code) and pay any such worker the difference between the specified rate and the amount paid. Ericsson subcontracted work to Global Telecon, Ltd. (Global).[9]

---

[8] Former section 1775 stated in part: "The contractor shall, as a penalty to the state or political subdivision on whose behalf the contract is made or awarded, forfeit twenty-five dollars ($25) for each calendar day, or portion thereof, for each workman paid less than the prevailing rates as determined by the director for such work or craft in which such workman is employed for any public work done under the contract by him or by any subcontractor under him. The difference between such prevailing wage rates and the amount paid to each workman for each calendar day or portion thereof for which each workman was paid less than the prevailing wage rate shall be paid to each workman by the contractor, and the body awarding the contract shall cause to be inserted in the contract a stipulation that the provisions of this section will be complied with."

[9] This appeal does not present any issue as to the terms of the subcontract and the duties between the contractors.

For the purposes of summary adjudication, these parties do not dispute the following factual allegations. Contrary to the express contract term, UCSD never specified, posted or filed wage rates for the type of work to be performed under the contract.[10] The director had made special wage determinations for communications technicians on prior projects; i.e., for the Franchise Tax Board and for Cal State Polytechnic University at Pomona in 1984. These special determinations applied only to those specific projects. No special determination was requested for the university's project. After the work was completed, the department began an investigation. Since no general rate had been determined for communications technicians, it considered the only two general classifications which were applicable locally, laborer and inside wireman, and wrote Global asking it to provide evidence as to which of the two rates applied. Finding Global's response inadequate,[11] the department applied the higher of the two rates, that of inside wireman, the category it deemed most similar. An inside wireman is a trained electrician requiring four years' apprenticeship who works with high voltage electrical wiring, whereas communications technicians install telephone equipment wiring involving negligible electrical voltage. If a timely request for a special determination had been requested and provided for the university's project, communications technicians would have been an appropriate classification. On May 22, 1986, the director established a general wage determination for communications technicians.

In addition to the above undisputed facts, the record includes the following information. According to the department, after a claim was filed in July 1986, its investigation revealed that Global had classified its employees as *sound technicians* and paid them a lower wage than either inside wiremen or communications technicians would have received. The prevailing rate established generally by the director for inside wireman was $27.62 per hour. The special determinations made for persons classified as communications technicians on the Franchise Tax Board and Cal State projects in 1984 commenced at $6.29 and $6.38 per hour. In May 1986, the director established a general wage determination for communications technician at $15.28 per hour.[12] Global paid its employees hourly rates ranging from $3 to $14.85 during 1985 and 1986.

---

[10] As we will discuss later, although the DLSE stipulated the contractor's representation to this effect was accurate, the contractor cites only page 84 of the deposition of Roger D. Miller, a regional manager for DLSE, in support. Neither on page 84 nor on any other page of those portions of Miller's deposition presented to the trial court or included in the appellate record is there any such representation. (See fn. 19, *post*.)

[11] Global merely provided records of wages paid without delineating the specific work tasks its employees performed.

[12] In January 1988, a general wage determination commencing at $6.98 was made for *telephone installation worker*, which, according to deposition testimony of a DLSE manager, to a large extent corresponds to what used to be called a communications technician.

DLSE's regional manager, Miller, presented the department's position as follows. The employees at UCSD's project were installing electrically charged phone wires. As between the two general classifications established locally, inside wireman was chosen since such workers generally deal with electrical wiring, whereas laborers do not handle electrically charged wiring. While it seems obvious that a portion of the job could be done by a laborer, for example pulling wires through and laying the conduit, an electrician would have to perform the hooking up and wiring once the conduit was laid. The department did not estimate any of the work under the laborer's rate for Global, however, because the records provided showed only one hourly rate for all the workers and Global ignored the department's request to identify how the actual job was segmented between different tasks. Had Global submitted evidence justifying a laborer's rate for some employees, the department would have utilized it for those workers, but the department will not split a classification absent proof submitted by the employer.[13] Because UCSD and the contractor failed in their responsibility to obtain a special classification for these workers, the department had to make the determination. When making its investigation as to whether prevailing wages were paid, the department was required to utilize a wage classification already determined by the director to apply to this locality; the DLSE is an enforcement body not authorized to create a classification, to use special determinations made for other projects, to use a determination issued after the bidding of a project, or to use an unlisted classification. For workers who perform tasks for which there is no local classification, it was DLSE's unwritten policy to determine the existing local classification in force which most closely resembled the work performed.[14]

## III

### A

■ As to this contract, UCSD is not exempt from the public works prevailing wage laws.

---

[13] In a letter dated February 1987, DLSE explained its position regarding the UCSD project and offered to review its audit if records were provided which would allow the application of another classification, such as laborer.

[14] DLSE's investigation of Global was completed in December 1986. Thereafter, in August 1987 the DLSE incorporated the policy in its revised training and reference manual as follows: "Sometimes employers use workers in classifications other than those shown in the prevailing wage determinations. Match the type of work being performed to an existing classification. If no classification exists, match the type of work with the classification closest to an existing classification for which a prevailing wage determination has been issued."

At the time of the investigation, the manual provided different instructions, but DLSE followed the policy as reflected in the later-revised manual.

Under article IX, section 9 of the California Constitution, the Regents of the University of California have full powers of organization and government, with some specified exceptions, and are generally not subject to legislative regulation as a public agency. (*San Francisco Labor Council* v. *Regents of University of California* (1980) 26 Cal.3d 785, 788 [163 Cal.Rptr. 460, 608 P.2d 277].)[15] One exception exists for legislation regulating public agencies which involves matters of statewide concern and not internal university affairs. (*Id.* at p. 789.) In the *San Francisco Labor Council* case, the court held that an Education Code provision requiring the university to pay prevailing wages to certain employees was invalid, since the prevailing wage requirement was not a matter of statewide concern. The court relied on its decision in *Sonoma County Organization of Public Employees* v. *County of Sonoma* (1979) 23 Cal.3d 296, 317 [152 Cal.Rptr. 903, 591 P.2d 1], which held the salaries of employees of charter cities and charter counties was a matter of local rather than statewide concern, since the salaries of local employees constituted a municipal affair, encompassed within the constitutional power in local authority to the exclusion of legislative interference. The court concluded salary determination was as important to the autonomy of the university as it was to the independence of chartered cities and counties. (*San Francisco Labor Council* v. *Regents of University of California, supra*, 26 Cal.3d at p. 791.)

In contrast to the essentially internal nature of the wages paid university employees, we are persuaded the nature of the Labor Code's prevailing wage requirement for public works does not involve the university's internal affairs and is a matter of statewide concern. In *O. G. Sansone Co.* v. *Department of Transportation* (1976) 55 Cal.App.3d 434, 458-460 [127 Cal.Rptr. 799], the court explored the purposes of the public works prevailing wage laws—which include protecting employees from substandard earnings if contractors could recruit labor from distant cheap-labor areas; allowing union contractors to compete with nonunion contractors for public works; the benefit to the state of superior efficiency arising from well-paid labor; and the need to compensate nonpublic employees with higher wages since they do not have the steady employment and fringe benefits that public employees enjoy.[16] In short, the focus of the public works prevailing wage

---

[15] Since the contractor's interests are affected by the applicability of the prevailing wage laws to the university, we reject the department's argument that the contractor lacks standing to raise the issue. (*Kane* v. *Redevelopment Agency* (1986) 179 Cal.App.3d 899, 903 [224 Cal.Rptr. 922].)

[16] In *Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 63-64 [81 Cal.Rptr. 465, 460 P.2d 137], the court held the public works prevailing wage requirement applied only to contracts with private employers, and did not apply to work carried out by a public agency with its own public employees. After *Bishop,* the statute was amended to expressly exclude public employ-

law is on the protection of private sector workers, the latter who are divorced from the internal affairs of the public agency. Further, unlike the situation with ongoing university employees, the fluctuating nature of the university's use of private contractors, plus the fact that the latter are not confined to a fixed pool of employees, creates an interest in state control to ensure consistency in wage levels. We conclude the protection afforded private sector employees working on public projects is a matter of statewide concern and accordingly the public works prevailing wage laws are applicable to the university.

As amicus curiae, the university asserts the issue of the applicability of the prevailing wage law requires a remand to the trial court for resolution based on a factual analysis of the particular contract. It cites *Vial* v. *City of San Diego* (1981) 122 Cal.App.3d 346, 347-348 [175 Cal.Rptr. 647], where this court upheld the validity of a chartered city's resolution requiring payment of prevailing wages under the city's public works contracts only when required by state or federal grants and on jobs considered to be of state concern. *Vial* reasons that since the resolution specifically excluded state and federally funded projects and those considered to be of state concern, the resolution was properly limited to projects within the sphere of municipal affairs and did not apply to matters of statewide concern. (See also *City of Pasadena* v. *Charleville* (1932) 215 Cal. 384, 388-392 [10 P.2d 745], disapproved on other grounds in *Purdy & Fitzpatrick* v. *State of California* (1969) 71 Cal.2d 566, 585 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194].)[17]

*Vial*'s holding is inapplicable here since we are not presented with a university rule excluding some types of contracts from prevailing wage laws, but rather a university contract explicitly providing for payment of the state law prevailing wage. Under these circumstances, and absent a situation comparable to that in *Vial*, there is no need for remand.[18]

---

ees from its coverage. (§ 1771; see *O. G. Sansone Co.* v. *Department of Transportation, supra,* 55 Cal.App.3d at p. 459.)

[17] *Vial* relies on the *Charleville* case to support its holding. In *Charleville,* a charter city had amended its charter to state that its municipal affairs were not governed by state laws. *City of Pasadena* v. *Charleville, supra,* 215 Cal. at page 388, states the rule that when a charter is silent as to a municipal affair, state law governs; whereas when a charter is amended to make a provision regarding a municipal affair, the charter governs. *Charleville* reasons that since the city had amended its charter to avail itself of the privilege to govern its municipal affairs, the prevailing wage laws were not applicable to a contract involving a municipal affair (i.e., construction of a fence around a city reservoir). (*Id.* at pp. 388-389; see generally *Sonoma County Organization of Public Employees* v. *County of Sonoma, supra,* 23 Cal.3d at p. 315 [if a charter city legislates with regard to municipal affairs, its charter prevails over state law].)

[18] The university also asks us not to reach the issue of whether it is covered by the prevailing wage laws, instead urging us to hold that compliance is excused in any event based on the

B

■ Next, we evaluate the argument that no wage rate had been identified for the workers at the UCSD project. The contractor asserts that the language of section 1774, i.e, the "contractor . . . shall pay not less than the *specified* prevailing rates of wages. . . ." (italics added), establishes that since no rate was specified for communications technicians, it was not obligated to pay the prevailing rate.

In the contract between the university and the contractor, the contractor agreed to pay the prevailing wage rate as specified in the schedule of wages incorporated by reference into the contract, and agreed to pay a penalty if it failed to do so. There is no showing that a wage schedule containing all applicable rates generally applicable to crafts in this locale was not on file at the university offices and available for inspection upon request, as provided by the contract.[19] Thus, based on the incorporated wage schedule, the wage rates for the project were specified. What was not specified was in which classification the workers at the project were included.

We conclude the university's failure to specify all appropriate classifications cannot excuse a contractor's expressly agreed-upon responsibility to pay the prevailing wage rate. Since the schedule of wages at the university's office was incorporated into the contract, the contractor was on constructive notice as to the wages specified in that schedule, and had the opportunity to request clarification as to which existing classification ap-

lack of a published classification for communications technicians. Since we hold below that compliance with the agreement to pay the prevailing wage law is not excused merely because of the hindsight determination that the classifications were inexact, we address the issue of whether the university is subject to the prevailing wage laws so as to allow DLSE enforcement actions against its contractor.

We note the contractor and the university do not argue the project was not a public works contract, but merely assert the university's exemption based on its constitutionally mandated autonomous status. Section 1720 broadly defines public works as "[c]onstruction, alteration, demolition or repair work done under contract and paid for in whole or in part out of public funds. . . ."

[19] The contractor's and DLSE's statements of undisputed facts state: "Although the contract between Ericsson and UCSD called for the payment of prevailing wages and stated that a schedule of prevailing per diem wages would be posted at the job site and would be on file at UCSD, UCSD never specified the appropriate wage rates nor posted or filed wage rates for the type of work to be performed under the UCSD/Ericsson contract." The contractor's statement cites Miller's deposition, the latter which indicates that UCSD never made a determination as to the classification on the project. Resolving doubts in favor of the party opposing the summary judgment, we interpret the undisputed fact as being merely that UCSD did not have on file a wage rate for communications technicians, whereas it presumably did have on file a wage schedule. If it did not have a wage schedule on file, the trial court may evaluate the import of this fact on the contractor's duty, under all the circumstances of the case.

plied or to request the director to specially designate one. That was the procedure apparently used by the parties to the Franchise Tax Board and Cal State projects to obtain communication technician special classifications in 1984.[20]

Here, the contractor does not claim it relied on the existing schedule of wages or paid the workers in accordance with one of the classifications therein. Nor does it contend prevailing wages were not paid because it was unable to determine an appropriate rate. Rather, it asserts as a matter of law it was not obligated to pay a locally prevailing rate because its employees did not fall precisely within a classification on the university's list.

It would defeat the legislative intent of affording private sector employees payment of prevailing wages on public works, to allow the contractor to excuse a failure to pay a prevailing wage solely because an after-the-fact examination reveals no listed classification was precisely limited to the type of craft employed on the project. Rather, we conclude since the contractor agreed to pay the prevailing wage and was notified of the schedule specifying the wage rates, it is not, as a matter of law, excused from its obligation to pay the prevailing rate. (See *Fanelli, Antuzzi, Bonacorsi Painting, Inc.* v. *Santa Clara Unified School Dist.* (1983) 141 Cal.App.3d 686, 690 [190 Cal.Rptr. 515]; *Waters* v. *Division of Labor Standards Enforcement* (1987) 192 Cal.App.3d 635, 639 [237 Cal.Rptr. 546].)[21]

As summarized above, under the department's regulations, the awarding body was required to request a special determination for a type of worker

---

[20] We note under California Code of Regulations, title 8, section 16301, the contractor could also request clarification from the department. The regulation states: "Any new or unresolved issue other than of a routine nature as to coverage of or amount of the prevailing wage raised by an awarding body or other interested party may be referred to the Chief of DLSR [Division of Labor Statistics and Research] as the Director's duly authorized representative for final determination, including appeals of any determination relating either to coverage or to the rate of the prevailing wage rate, subject only to Section 16300(b) of these regulations."

[21] In both *Fanelli* and *Waters,* the duty to pay the prevailing wage was found to be triggered once the contractor so agreed in the contract, even though the awarding body was deficient in complying with its statutory duties. In *Fanelli,* the public agency had the wage schedule on file, but did not post it, and the court noted the posting requirement was to give the workers, not the contractor, notice. In *Waters,* the public agency did not state the prevailing rate, nor did it include a statement that the rates were on file in its office. The court in *Waters* held the contractor was nevertheless liable to the workers to pay the prevailing rate, but given the contractor's good faith effort to ascertain the prevailing rate, was not liable to the state for a penalty. (See fn. 23, *post.*) Neither case presents a situation, as here, where the workers were not covered by a published classification. However, as we explain, we conclude the latter deficiency does not excuse as a matter of law the contractor's express agreement to pay the prevailing wage.

not within the published classifications *before* advertising for bids. (Cal. Code Regs., tit. 8, §§ 16100, 16202.) However, if the awarding body fails to specify the prevailing wage rate, any interested party can petition the director *before* the contract is awarded. (Cal. Code Regs., tit. 8, § 16202.) Here, neither the university nor the contractor requested a special determination, but contracted to pay the prevailing wages as provided in the wage schedule. The failure to request a special determination was the fault of the university and/or the contractor; it was not the fault of the workers whom the prevailing wage laws are designed to protect.

Regarding the university's purported failure to post the wage schedule at the jobsite, this requirement is designed to give the workers notice of the wages to which they are entitled. Under the statutory scheme and the terms of the contract, the contractor was aware of its obligation to pay the prevailing wage before the work was commenced. (*Fanelli, Antuzzi, Bonacorsi Painting Inc.* v. *Santa Clara Unified School Dist., supra*, 141 Cal.App.3d at p. 691.) Thus, any failure by the university to post the schedule does not diminish the contractor's duty to pay the prevailing rate.

The contractor argues DLSE has no authority to set a wage rate by applying a similar but inaccurate classification after the contract was completed, and that to do so subjects it to unanticipated labor costs and violates its due process and statutory rights to know the applicable rate before the contract is awarded. Further, it asserts the department's policy of applying a similar classification if the workers are not covered by the published classifications constitutes a rule which must be promulgated under the procedures set forth in the Administrative Procedure Act (APA), requiring notice and an opportunity for comment.

We disagree with the contractor's characterization of the presented facts. Its contract with the university set the wage rate by incorporating the existing general wage schedule. Since the parties have not contended otherwise and since we resolve all doubts in favor of the party opposing summary judgment, we assume that a wage schedule was on file at the university's office (see fns. 10, 19, *ante*) and that it is the same schedule as the one published by the department and utilized by DLSE in selecting a classification.[22] Thus, there is at least a triable issue of fact as to whether the DLSE's action of choosing one of the classifications within the wage schedule merely enforced the parties' agreement. As we have stated, the contrac-

---

[22] If the facts are different, any effect on the contractor's obligation to pay the prevailing wage is for the trier of fact to resolve in the first instance after being presented with all the facts.

tor agreed to be bound by the wage schedule and was notified the schedule was on file and available for inspection, and on this record it cannot as a matter of law for purposes of summary judgment establish that the department has imposed unanticipated labor costs on it in violation of statutory or due process rights.

■ Regarding the department's policy of choosing the most closely related classification when the workers are not precisely covered under one of the published classifications, we agree that this is a rule of general application which implements, interprets and makes specific the statute, not relating to the internal management of the agency, and accordingly which should be promulgated under the APA. (See Gov. Code, §§ 11342, subd. (b), 11347.5, subd. (a).)[23] As noted in *Winzler & Kelly* v. *Department of Industrial Relations* (1981) 121 Cal.App.3d 120, 127 [174 Cal.Rptr. 744], one of the matters exempted from the APA are regulations which establish or fix rates—including the director's wage determinations under the prevailing wage law. (See Gov. Code, §§ 11346.1, subd. (a), 11343, subd. (a)(1).) *Winzler* holds that since the director's coverage determination (i.e., that a certain type of worker is covered under the prevailing wage laws) is an essential step in the wage determination process, the coverage determination is equally exempt from the APA requirements. Here, the department does not assert that its policy of using closely related classifications to apply the rates to a particular project is a step in the process of prevailing rate determinations so as to be exempt from the APA, nor do we perceive it as such. Rather, the policy creates a standard for the application of already established rates, to cover a situation not addressed in the statute or regulations, and the standard should be promulgated under the APA. (Contrast *Skyline Homes, Inc.* v. *Department of Industrial Relations* (1985) 165 Cal.App.3d 239, 253 [211 Cal.Rptr. 792] [enforcement policy merely interpreting already established regulation need not comply with APA].)

■ However, the failure to promulgate such a regulation does not defeat the department's right to have the trial court enforce a prevailing rate

---

[23] Government Code section 11342, subdivision (b) states in part: " 'Regulation' means every rule, regulation, order, or standard of general application or the amendment, supplement or revision of any such rule, regulation, order or standard adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure, except one which relates only to the internal management of the state agency."

Government Code section 11347.5, subdivision (a) states: "No state agency shall issue, utilize, enforce, or attempt to enforce any guideline, criterion, bulletin, manual, instruction, order, standard of general application, or other rule, which is a regulation as defined in subdivision (b) of Section 11342, unless the guideline, criterion, bulletin, manual, instruction, order, standard of general application, or other rule has been adopted as a regulation and filed with the Secretary of State pursuant to this chapter."

in this case. In the event of trial, the fact finder may evaluate the department's enforcement demand in light of the contract terms of the parties, applying contract law principles, the Labor Code and its underlying policy, and the existing regulations—but without utilizing the department's unenforceable policy to support the validity of its determination. (See *Armistead* v. *State Personnel Board* (1978) 22 Cal.3d 198, 204-205 [149 Cal.Rptr. 1, 583 P.2d 744] [rule not properly promulgated under APA should not be given deference as administrative interpretation].)

## IV

*In sum, we emphasize, in the event of trial, the trial court shall be the fact finder to determine the appropriate wage rate for the workers whose wages are in dispute if it finds the contractor is not contractually bound to a classification in the existing wage rate list incorporated by reference into the written agreement.*

The propriety of any penalty is also to be resolved by the trial court upon evaluating all relevant circumstances.  ▉  Although a penalty indirectly benefits employees as a whole by giving contractors an incentive to comply with the law, it does not directly benefit the employees on the project since· it is paid to the state. Accordingly, a state agency's failure to satisfy its statutory and contractual obligations pertaining to the prevailing wage may under some circumstances excuse the contractor's duty to pay a penalty for failure to pay the prevailing wage. Thus, it is appropriate to examine the extent to which UCSD's failure (if any) to comply with its obligations under the prevailing wage law may have hindered the contractor in its ability to comply. After evaluating all relevant circumstances, the trier of fact can determine whether penalties should be imposed. (See *Waters* v. *Division of Labor Standards Enforcement, supra*, 192 Cal.App.3d at pp. 639-642 [although contractor was required to pay the prevailing wage, state was barred under doctrine of equitable estoppel from imposing penalty on contractor who in good faith tried to comply with the law].)[24]

∴

---

[24] In *Waters*, the contractor asked a city architect overseeing the project what the prevailing rate was, and investigated the rates at a local federally funded project.

## DISPOSITION

The judgment is reversed.

Kremer, P. J., and Wiener, J., concurred.