Filed 5/26/15

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| VECTOR RESOURCES, INC., Plaintiff and Appellant, v. CHRISTINE BAKER, as Director, etc., et al., Defendant and Respondent. | D065224 (Super. Ct. No. 37-2012-00097974-CU-MC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge. Affirmed.

Sheppard, Mullin, Richter & Hampton, Richard M. Freeman and Matthew S. McConnell for Plaintiff and Appellant.

Christopher Jagard and John J. Korbol for Defendants and Respondents.

This action arises out of a determination by the Department of Industrial Relations (the Department) that plaintiff Vector Resources, Inc. (Vector) failed to pay the appropriate prevailing wages to its workers on a public works project for the San Diego Unified School District. Specifically, the Director of Industrial Relations (the Director) issued a decision in which she found that Vector underpaid its employees by failing to

1

pay a higher "shift differential" rate for work performed during shifts commencing after 12:00 noon. The director's decision was based on regulatory language in a document entitled "Important Notice To Awarding Bodies And Other Interested Parties Regarding Shift Differential Pay In The Director's General Prevailing Wage Determinations" (the Important Notice), which was posted on the Department's Web site. The Important Notice addresses shift differential pay for various crafts used on public works projects, and is augmented by additional regulatory language in a "Note" that the Department places on the cover page of prevailing wage shift provisions. The parties refer to this Note as "the Stamp."[1]

Vector filed a declaratory relief action against the Department, seeking a declaration that the Important Notice and Stamp are invalid and unenforceable as "underground regulations" because they were not promulgated in compliance with the notice and hearing requirements of the Administrative Procedure Act (APA). (Gov. Code, § 11340 et seq.)[2] Vector and the Department filed cross-motions for summary

---

[1] Presumably, the parties refer to this Note as the Stamp because Vector alleged in its operative second amended complaint that "since approximately 2006, the [Department] has 'stamped' [the] 'Note' on the cover page of shift provisions . . . ."

[2] "The APA establishes the procedures by which state agencies may adopt regulations. The agency must give the public notice of its proposed regulatory action (Gov. Code, §§ 11346.4, 11346.5); issue a complete text of the proposed regulation with a statement of the reasons for it (Gov. Code, § 11346.2, subds. (a), (b)); give interested parties an opportunity to comment on the proposed regulation (Gov. Code, § 11346.8); respond in writing to public comments (Gov. Code, §§ 11346.8, subd. (a), 11346.9); and forward a file of all materials on which the agency relied in the regulatory process to the Office of Administrative Law (Gov. Code, § 11347.3, subd. (b)), which reviews the

judgment, based largely on stipulated facts. The court granted the Department's motion on the ground that under Government Code section 11340.9, subdivision (g), the Important Notice and the Stamp are exempt from the notice and hearing requirements of the APA because they are part of an overall prevailing wage determination process that constitutes "rate setting."

Vector contends the summary judgment in favor of the Department must be reversed because (1) the Department admitted that the shift premium rule is a regulation, (2) the Department admitted that that regulation was not adopted in compliance with the APA, (3) the Department failed to prove that the shift premium regulation establishes or fixes rates within the meaning of Government Code section 11340.9, subdivision (g), (4) the court erred in failing to specifically cite the evidence it relied on to grant summary judgment, (5) the court's written order ignored the law and the admissible evidence, and (6) the Department's motion relied upon inadmissible evidence. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Factual Background*

The factual background is largely based on facts to which the parties stipulated in support of their cross-motions for summary judgment.

Workers employed on public works projects in California are entitled to be paid prevailing wages. The Department determines the prevailing rate of per diem wages. Prevailing wages are specific to the county where the work is to be performed and the

---

regulation for consistency with the law, clarity, and necessity (Gov. Code, §§ 11349.1, 11349.3)." (*Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 568.)

particular craft, classification, and type of work involved.  Contractors must use the prevailing wage determinations in effect on the bid advertisement date of the public works project.

When the Department determines that the regular straight-time hourly rate within a collective bargaining agreement is prevailing for a craft, classification, and locality, the Department may adopt the collective bargaining agreement by reference.   Over 90 percent of the Department's prevailing wage determinations are based on collective bargaining agreements.

The Department regularly issues prevailing wage determinations for shift work applicable to a craft, classification, or type of work, in connection with the general prevailing wage determinations.  In 2002, the Director issued an Important Notice regarding shift differential pay.  The Important Notice states:

> "The Director's General Prevailing Wage Determinations includes shift differential pay for various crafts used on public works projects. This notice is to clarify the worker's eligibility to receive the shift differential pay when working on a public works project.  Please note that not all crafts have shift differential pay published in the Director's General Prevailing Wage Determinations.  [¶] When a worker is required to work a regular shift, he/she must be paid the applicable craft rate from the Director's General Prevailing Wage Determinations for the construction activity he/she is performing. *However, when a worker is required to work a shift outside of normal working hours, he/she must be paid the shift differential pay according to the shift he/she is working.*  For example if only one shift is utilized for the day, and the work being performed is during the hours typically considered to be swing (second) shift or graveyard (third) shift, *the worker employed during the hours typically considered to be a swing shift or graveyard shift must be paid the shift differential pay for the shift he/she is working.*  If multiple shifts are used for the day, the worker working on the second or third shift must be paid according to the shift he/she is working."  (Italics added.)

4

In 2006 the Director began to place the Stamp on the cover page of prevailing wage shift provisions. The Stamp states:

> "Note: The shift provisions provided in the following pages provide guidance on the work hours that are applicable to each shift. *Shift differential pay is required and will be enforced during each applicable shift where shift differential pay is in the determinations.* Any shift provisions restricting the work hours for a particular shift for a type of work will not be enforced on public works. However, if work is performed during hours typically associated with a 2nd or 3rd shift the appropriate shift rate of pay is required. Shift differential pay shall not apply to work during traditional shift hour (swing or grave) if the determination includes a footnote that indicates that the non-shift rate may be paid for a special single shift. Please note the exemptions in California Code of Regulations Section 16200 (a)(3)(F) do not waive the shift differential pay. These regulatory exemptions only apply to overtime pay. Overtime pay shall be required in accordance with the determination and Labor Code Section 1810 through 1815." (Italics added.)

The Department issued the Important Notice and the Stamp without publishing a notice of intent to engage in rule making, inviting public comment, or holding a public hearing as the APA requires before the adoption of an administrative regulation, unless an exemption under Government Code section 11340.9 applies.

The Department maintains a Web site where the current prevailing wage determinations are available to the public. Public works contractors look to the Web site for the particular prevailing wage rates in effect at the time of the bid advertisement date for a public works project. For nearly all of the prevailing wage determinations posted on the Department's Web site, the Department also posts specific provisions of the applicable collective bargaining agreements regarding holidays, scope of work, and travel

and subsistence. Some, but not all, prevailing wage determinations also include shift rates. For those determinations, the Department also posts "associated" shift provisions.

The Important Notice is posted on the Department's Web site as one of at least 112 other "important notices" that clarify, explain, and provide guidance to the public regarding various aspects of prevailing wage determinations. The language of the Stamp appearing on the cover page of prevailing shift provisions is also posted on the Department's Web site.

B. *Procedural Background*

This case arises out of a prevailing wage enforcement action that the San Diego Unified School District brought against Vector. In that proceeding, the Director determined that Vector underpaid its employees on a public works project, by failing to pay the workers at a higher shift differential rate for work performed during a shift that began after 12:00 noon. Vector sought judicial review of the Director's decision by filing a petition for writ of mandate in superior court and the present action for declaratory relief.

In the present action, Vector filed a second amended complaint for declaratory relief against the Director and the Department (defendants) seeking a declaration that "(a) the [Department] impermissibly failed to comply with the APA, Labor Code section 1773, and the supporting regulations, when issuing the rules established by the [Important] Notice and the Stamp[;] (b) the [Important] Notice and the Stamp constitute invalid underground regulations[;] and (c) the [Important] Notice and the Stamp are not procedures that comply with the requirements of Labor Code [section] 1773."

6

The parties filed a stipulation to file cross-motions for summary judgment, stating they agreed "that the Court may be able to dispose of the issues in this case via summary judgment."[3] In its summary judgment motion, Vector argued that the rule requiring the payment of shift premiums set forth in the Important Notice and the Stamp was a regulation that must comply with the notice and hearing requirements of the APA. Because these requirements were not met, Vector asserted that the Important Notice and Stamp were invalid "underground regulations."

The Department conceded that the shift premium rule was a regulation and that the notice and hearing requirements of the APA were not met. However, the Department argued that the shift premium regulations were exempt from the APA as a "regulation that establishes or fixes rates, prices, or tariffs," under Government Code section 11340.9, subdivision (g).

The court granted summary judgment in favor of the Director and against Vector. The court decided the challenged regulations constituted rate-setting that was exempt from the APA's rulemaking requirements under Government Code section 11340.9, subdivision (g), stating:

> "[T]he APA contains an exception for a regulation that 'establishes or fixes rates, prices, or tariffs.' [Citation.] Wage determinations set 'rates' such that these determinations are exempt from the notice and hearing provisions of the APA. [Citation.] Moreover, the [Department] exercises delegated quasi-legislative power such that there is no constitutional requirement that it hold hearings or give

---

[3] The parties stipulated that the defendants' opposition to Vector's summary judgment motion would serve as their moving papers for their cross-motion.

notice before making wage determinations. [Citation.] As the wage determination process is exempted from the hearing requirements of the APA, a coverage determination, as an integral part of that process, is also exempted. [Citation.] There is no conflict in the evidence to create a [triable] issue of material fact to warrant any conclusion [other] than that (a) Defendants did not impermissibly fail to comply with the APA, Labor Code section 1773, and the supporting regulations when, when issuing the rules established by the 2002 [Important] Notice and the Stamp[;] and (b) [t]he 2002 [Important] Notice and the Stamp do not constitute invalid, underground regulations."

## DISCUSSION

### I. *STANDARD OF REVIEW*

A motion for summary judgment or adjudication must be granted when there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) Summary judgment is appropriate in a declaratory relief action when only legal issues are presented for the court's determination. (*Gafcon, Inc. v. Ponsor & Associates* (2002) 98 Cal.App.4th 1388, 1401-1402.) The defendant's burden in a declaratory relief action "is to establish the plaintiff is not entitled to a declaration in its favor. It may do this by establishing (1) the sought-after declaration is legally incorrect; (2) undisputed facts do not support the premise for the sought-after declaration; or (3) the issue is otherwise not one that is appropriate for declaratory relief." (*Id.* at p. 1402.)

"We review a summary judgment or summary adjudication ruling de novo to determine whether there is a triable issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. [Citation.] 'In practical effect, we assume the role of a trial court and apply the same rules and standards which govern a

8

trial court's determination of a motion for summary judgment.' " (*Mills v. U.S. Bank* (2008) 166 Cal.App.4th 871, 895.)

## II.  *ANALYSIS*

### A.  *Applicable Authority*

"The California Prevailing Wage Law is a comprehensive statutory scheme designed to enforce minimum wage standards on construction projects funded in whole or in part with public funds.  [Citations.] [¶] Under the prevailing wage law, all workers employed on public works costing more than $1,000 must be paid not less than the general prevailing rate of per diem wages as determined by the Director . . . for work of a similar character and not less than the general prevailing per diem wage for holiday and overtime work." (*Road Sprinkler Fitters Local Union No. 669 v. G & G Fire Sprinklers, Inc.* (2002) 102 Cal.App.4th 765, 776; Lab. Code, § 1771.)  "The central purpose of the prevailing wage law is to protect and benefit employees on public works projects." (*Ibid.*; *Lusardi Construction Co. v. Aubry* (1992) 1 Cal.4th 976, 985.)  "The Department's authority pertaining to prevailing wage determinations is quasi-legislative and it has legislative discretion with respect to such decisions." (*California Slurry Seal Assn. v. Department of Industrial Relations* (2002) 98 Cal.App.4th 651, 662.)

### B.  *The Important Notice and Stamp Are Exempt from the Notice and Hearing Requirements of the APA*

A prevailing wage determination is exempt from the notice and hearing requirements of the APA if it is "[a] regulation that establishes or fixes rates, prices, or tariffs." (Gov. Code, § 11340.9, subd. (g).)  Vector contends the Department does not fix

9

or set any actual prevailing rates, including shift premium rates; rather, the Department only *determines* the prevailing rates.  However, the prevailing wage statutes reveal that the Department or Director's "determining" prevailing rates is semantically equivalent to "fixing" or "establishing" rates.  Labor Code section 1773 provides, in relevant part:

> "In *determining* the rates, the Director of Industrial Relations shall ascertain and consider the applicable wage rates established by collective bargaining agreements and the rates that may have been predetermined for federal public works, within the locality and in the nearest labor market area.  Where the rates do not constitute the rates actually prevailing in the locality, the director shall obtain and consider further data from the labor organizations and employers or employer associations concerned, including the recognized collective bargaining representatives for the particular craft, classification, or type of work involved.  The rate *fixed* for each craft, classification, or type of work shall be not less than the prevailing rate paid in the craft, classification, or type of work. [¶] If the director *determines* that the rate of prevailing wage for any craft, classification, or type of worker is the rate established by a collective bargaining agreement, the director may adopt that rate by reference as provided for in the collective bargaining agreement and that *determination* shall be effective for the life of the agreement or until the director determines that another rate should be adopted."  (Italics added.)

The italicized words in Labor Code section 1773 show that the terms "determine" and "fix" are used interchangeably and have the same meaning in the statute–i.e., the Director's *determination* of a prevailing wage rate *fixes* (i.e., establishes) that rate.

Labor Code section 1773.9 similarly illustrates that there is no semantic difference between "establishing" a prevailing wage rate and "determining" such a rate.  Labor Code section 1773.9, subdivision (a) states:  "The Director of Industrial Relations shall use the methodology set forth in subdivision (b) to *determine* the general prevailing rate of per diem wages in the locality in which the public work is to be performed."  (Italics added.)  Labor Code section 1773.9, subdivision (b) states:

10

"The general prevailing rate of per diem wages includes all of the following: [¶] (1) The basic hourly wage rate being paid to a majority of workers engaged in the particular craft, classification, or type of work within the locality and in the nearest labor market area, if a majority of the workers is paid at a single rate. If no single rate is being paid to a majority of the workers, then the single rate being paid to the greatest number of workers, or modal rate, is prevailing. If a modal rate cannot be *determined*, then the director shall *establish* an alternative rate, consistent with the methodology for determining the modal rate, by considering the appropriate collective bargaining agreements, federal rates, rates in the nearest labor market area, or other data such as wage survey data. [¶] (2) Other employer payments included in per diem wages pursuant to [Labor Code] Section 1773.1 and as included as part of the total hourly wage rate from which the basic hourly wage rate was derived. In the event the total hourly wage rate does not include any employer payments, the director shall *establish* a prevailing employer payment rate by the same procedure set forth in paragraph (1)." (Italics added.)

Based on the Legislature's interchangeable use of the terms "determine," "establish," and "fix," we conclude that in "determining" prevailing wage rates, the Department "establishes [and] fixes rates" within the meaning of Government Code section 11340.9, subdivision (g).

We further conclude that the Important Notice and Stamp both constitute regulations that "establish" rates within the meaning Government Code section 11340.9, subdivision (g), notwithstanding the fact that they do not establish or fix a shift differential rate for a particular craft, classification, or type of work within a specific locality. The Important Notice states that "[t]he Director's General Prevailing Wage Determinations includes shift differential pay for various crafts used on public works projects[,]" and clarifies that "when a worker is required to work a shift outside of normal working hours, *he/she must be paid the shift differential pay according to the shift he/she is working*." (Italics added.) The Stamp similarly provides that "[*s*]*hift differential pay is required and will be enforced during each applicable shift where shift differential pay is*

11

*in the determinations.*" (Italics added.)  Thus, the Important Notice and Stamp establish prevailing wage rates for shifts outside of normal working hours–i.e., they establish that workers must be paid the applicable shift differential pay for the shift he or she is working. As integral parts of the prevailing wage determination process, the Important Notice and Stamp are exempt from the notice and hearing requirements of the APA.  (*Winzler & Kelly v. Department of Industrial Relations* (1981) 121 Cal.App.3d 120, 128 [the overall wage determination process and integral parts of that process are exempt from the prior hearing requirements of the APA].)

Vector relies heavily on this court's opinion in *Division of Labor Standards Enforcement v. Ericsson Information Systems, Inc.* (1990) 221 Cal.App.3d 114 (*Ericsson*) in arguing that the Important Notice and Stamp do not fall within the rate setting exemption of Government Code section 11340.9.  In *Ericsson*, a contract between the University of California of San Diego and a contractor for installation of a telephone system required the contractor to pay prevailing wages.  (*Ericsson, supra,* 221 Cal.App.3d at p. 120.)  However, because no prevailing wage rate had been determined for communications technicians who worked on the project, the Division of Labor Standards Enforcement (DLSE) applied the rate that had been determined for "inside wiremen," the classification that DLSE deemed to be the most similar to communications technicians.  (*Id.* at p. 121.)  The contractor contended the DLSE's policy of applying a similar classification to workers who were not covered  by a published classification constituted a rule subject to the notice and hearing requirements of the APA.  (*Id.* at p. 127.)

12

The *Ericsson* court agreed that the DLSE's policy was a rule that "should be promulgated under the APA." (*Ericsson, supra,* 221 Cal.App.3d at p. 128.) The court concluded the DLSE's policy was not "a step in the process of prevailing rate determinations so as to be exempt from the APA . . . ." (*Ibid.*) Rather, the *Ericsson* court decided that the policy created "a standard for the application of already established rates, to cover a situation not addressed in the statute or regulations . . . ." (*Ibid.*) Vector contends that like the policy at issue in *Ericsson*, the Important Notice and Stamp are subject to the notice and hearing requirements of the APA because they create a general standard or rule as to when and under what circumstances already existing shift premium rates must be paid.

We conclude *Ericsson* is inapposite. The DLSE's policy at issue in *Ericsson* applied established prevailing wage rates for a particular class of workers to a different class of workers *for whom no prevailing wage determination had been made*–i.e., the "already-established" rates had *not* been established for the workers to whom the DLSE applied them. The DLSE's policy was not part of the overall rate determination process because no such process had been implemented for those workers. In contrast, the Important Notice and Stamp apply already-established shift differential rates to the workers *for whom those rates were established*, clarifying the circumstances under which those rates are to be applied. As part of the prevailing wage determination process for those workers, the Important Notice and Stamp are exempt from the notice and hearing requirements of the APA. (*Winzler & Kelly v. Department of Industrial Relations, supra,* 121 Cal.App.3d at p. 128.)

13

Even if the Important Notice and Stamp did not "fix" or "establish" rates within the meaning of Government Code section 11340.9, subdivision (g), they are exempt from the notice and hearing requirements of the APA under Labor Code section 1773.5, subdivision (d), which became effective January 1, 2014 as part of the 2013 amendment of Labor Code section 1773.5. (Stats. 2013, ch. 780 (S.B.377), § 3.)[4] Labor Code section 1773.5, subdivision (d) provides: "The director shall have quasi-legislative authority to determine coverage of projects or types of work under the prevailing wage laws of this chapter. A final determination on any administrative appeal is subject to judicial review pursuant to Section 1085 of the Code of Civil Procedure. These determinations and *any determinations relating to the general prevailing rate of per diem wages and the general prevailing rate for holiday*, *shift rate, and overtime work, shall be exempt from the Administrative Procedure Act . . . .*" (Italics added.)

We construe the term "shift rate" in the italicized statutory language as a reference to the pay rate for shifts outside of normal working hours. Thus, Labor Code section 1773.5, subdivision (d) broadly exempts from the APA *any determination relating to* the general prevailing rate for shifts outside of normal working hours. The Important Notice and Stamp clearly are determinations by the Director that, at minimum, *relate to*, if not establish or fix, shift differential pay rate (i.e., the rates for shifts outside of normal

_____

4       Because declaratory relief operates prospectively to declare future rights (*County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 607), "we apply the law in effect at the time of review because that is the law under which the judicial declaration will have effect." (*City of Watsonville v. State Dept. of Health Services* (2005) 133 Cal.App.4th 875, 885.)

14

working hours).  Accordingly, the Important Notice and Stamp are exempt from the notice and hearing requirements of the APA under Labor Code section 1773.5, subdivision (d).[5]

DISPOSITION

The judgment is affirmed.  The Department is awarded its costs on appeal.


NARES, Acting P. J.

WE CONCUR:


O'ROURKE, J.


IRION, J.

---

[5]    In light of our legal conclusion that the Important Notice and Stamp are exempt from the notice and hearing requirements of the APA, we need not address Vector's contentions that the court erred in failing to specifically cite the evidence it relied on to grant summary judgment, the court's written order ignored admissible evidence, and the Department's motion relied upon inadmissible evidence.