[Civ. No. 50341. First Dist., Div. Four. June 17, 1981.]

WINZLER & KELLY et al., Plaintiffs and Respondents, v. DEPARTMENT OF INDUSTRIAL RELATIONS et al., Defendants and Appellants; WESTERN ASSOCIATION OF ENGINEERS, OPERATING ENGINEERS LOCAL UNION NO. 3, Intervener and Respondent.

[And four other cases.]*

* *Hogan-Schoch & Associates, Inc.* v. *Department of Industrial Relations* (Superior Court of Sonoma County, Nos. 92318, 93338); *McGlasson & Associates* v. *Department of Industrial Relations* (Superior Court of Kings County, No. 28567); *Siegfried & Associates* v. *Department of Industrial Relations* (Superior Court of San Joaquin County, No. 139553).

122

**COUNSEL**

Christine C. Curtis, and Peter H. Weiner for Defendants and Appellants.

Edgar B. Washburn, David C. Spielberg, Washburn, Kemp & Wagenseil, Larry P. Schapiro, Littler, Mendelson, Fastiff & Tichy, Leo H. Schuering, Archie G. Parker and Rowland & Parker for Plaintiffs and Respondents.

Steven M. Bernard and McKeehan, Bernard & Wood for Intervener and Respondent.

## OPINION

**CALDECOTT, P. J.**—Defendants Department of Industrial Relations and Donald Vial, the director of the department (appellants) appeal from an adverse judgment rendered in an action brought for writ of mandate and related relief.

### THE FACTS

The Director of the Department of Industrial Relations (hereafter director or department) was asked by an employer group, representing local awarding bodies, whether surveyor classifications were covered under the prevailing wage laws. On May 26, 1977, the director issued a determination that field surveying is performed by the type or classification of worker (certified chief of party, chief of party, rodman/chairman and instrumentman) intended to be covered by the act. (Lab. Code, § 1772.) The coverage determination of the director was made in a letter dated the same day, addressed to Paul L. Schoch of Hogan-Schoch & Associates, Inc. (Hogan-Schoch) and signed by Christine Curtis on behalf of the director. The trial court found that, although contained in a letter addressed to a specific firm, the coverage determination of May 26, 1977, had a statewide impact which necessarily applied to all public entities letting contracts for public works and all employers of field survey workers or public works contracts.

Hogan-Schoch protested both the coverage determination and the lack of a hearing and filed a petition for writ of mandate in the Sonoma County Superior Court. On July 13, 1977, at the request of Hogan-Schoch, the department held a hearing on the inclusion of surveyors in the prevailing wage law. This hearing, of course, could not affect the coverage determination of May 26, 1977, because it was held subsequent to its issuance. Nonetheless, on August 5, 1977, the director reaffirmed his initial coverage determination based upon the July 13, 1977, posthearing.

On August 12, 1977, the director announced that as a consequence of his prior coverage determination he was making a sweeping "wage rate determination" for surveyors throughout northern California. This wage rate determination in fact involved two separate provisions: first, the director purported to establish an "appropriate labor market area" consisting of all 46 northern California counties; and second, he declared that the wage rate prevailing in that "market area" was the San

Francisco Bay Area wage scale of Operating Engineers Local Union No. 3's (Local 3) "master" collective bargaining agreements. The court below found that "the August 12, 1977 general determination was separate and distinct from the May 26, 1977 general determination."

Both the coverage determination and the wage rate determination were challenged in several lawsuits filed by petitioners Winzler & Kelly, Hogan-Schoch, Western Association of Engineers and Land Surveyors, McGlasson & Associates, Consulting Engineers Association of California, and Siegfried & Associates (hereafter respondents) in several courts around the state. On motion by the department these lawsuits were ordered coordinated as Judicial Council Coordination Proceeding No. 449 (entitled Surveyor Classification Cases).

The trial judge determined that the issuance of the two general determinations was a quasi-legislative action which should be reviewed under Code of Civil Procedure section 1085. He concluded that the director was required under the Administrative Procedure Act (APA) (Gov. Code, § 11370 et seq.)[1] to hold administrative hearings *prior* to issuing any of the challenged determinations and that he had failed to do so. Accordingly, he held that the challenged determinations were void and remanded the entire matter to the department for further proceedings consistent with the APA and his order. Judgment was entered accordingly. The appeal at bench has been taken from the judgment.

### THE ISSUE

The sole issue presented on appeal is whether the director was required to hold a hearing prior to issuing the determination that the field surveying work was covered by the California prevailing wage law (Lab. Code, § 1720 et seq.).

██ Before discussing and analyzing the principal issue at bench, as a threshold matter we note that, as the parties themselves concede, there is no constitutional requirement to hold a public hearing in quasi-legislative matters. The parties are also in agreement that prior hearing is not required under the statutes regulating the prevailing wage law ei-

---

[1]Unless otherwise indicated, all further references will be made to the Government Code. We also note that Government Code sections 11371-11445 were repealed by Statutes 1979, chapter 567, section 2, effective July 1, 1980, and substantially reenacted as Government Code sections 11342-11351. Since the former provisions were in effect all relevant times herein, we cite the former code sections in this opinion.

ther. Consequently, in order to determine the issue here raised (i.e., whether a prior hearing is required before a coverage determination under the California prevailing wage law) we are compelled to resort to the APA, which establishes minimum procedural requirements applicable to quasi-legislative and quasi-judicial actions by state agencies. (2)   In doing so we follow the established principles which hold that the different codes blend into each other and constitute a single statute for the purposes of statutory construction and that the legislative intent may be determined not only from an individual code but the whole body of law. (*Pesce* v. *Dept. Alcoholic Bev. Control* (1958) 51 Cal.2d 310, 312 [333 P.2d 15]; *American Friends Service Committee* v. *Procunier* (1973) 33 Cal.App.3d 252, 260 [109 Cal.Rptr. 22].) The rationale behind this rule is the assumption that the Legislature was aware of the existing, related laws and intended to maintain a consistent body of statutes. (*Stafford* v. *Realty Bond Service Corp.* (1952) 39 Cal.2d 797, 805 [249 P.2d 241]; *Lambert* v. *Conrad* (1960) 185 Cal.App.2d 85, 93 [8 Cal.Rptr. 56].) It follows that in the instant case we must construe the prevailing wage law together with the APA in order to arrive at the determination of whether the Legislature intended that the department hold a public hearing prior to a coverage determination.

With these introductory observations, we now turn to the statutory scheme outlined in the APA. We start with chapter 4.5 of the APA (§ 11371 et seq.), which applies to the quasi-legislative actions of state agencies. Section 11420 describes the coverage by providing that: "It is the purpose of this article to establish basic minimum procedural requirements for the adoption, amendment or repeal of administrative regulations. Except as provided in Section 11421, the provisions of this article are applicable to the exercise of any quasi-legislative power conferred by any statute heretofore or hereafter enacted, but nothing in this article repeals or diminishes additional requirements imposed by any such statute. The provisions of this article shall not be superseded or modified by any subsequent legislation except to the extent that such legislation shall do so expressly."

"Regulation" is defined in section 11371, subdivision (b), which sets forth in pertinent part that: "'Regulation' means every rule, regulation, order, or standard of general application or the amendment, supplement or revision of any such rule, regulation, order or standard adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it. . . . "

The exceptions referred to in section 11420 are described in section 11421, subdivision (a), which reads in part that: "The provisions of this article shall not apply to any regulation not required to be filed with the Secretary of State under this chapter, and only this section and Section 11422 of this article shall apply to any regulation prescribing an agency's organization or procedure or to an emergency regulation adopted pursuant to subdivision (b) of this section."

The requirements for filing regulations and exceptions to those requirements are set out in section 11380. It spells out in relevant portion that: "Every state agency shall: (a) Transmit to the department for filing with the Secretary of State and with the Rules Committee of each house of the Legislature a certified copy of every regulation adopted by it except one which: (1) Establishes or fixes rates, prices or tariffs.... (3) Is directed to a specifically named person or to a group of persons and does not apply generally throughout the State."

Finally, sections 11423 through 11425 detail the applicable notice and hearing requirements. Section 11423 provides that notice must be given "[a]t least 30 days, prior to the adoption, amendment or repeal of a regulation...." Section 11424 outlines the required contents of the notice. Lastly, section 11425 sets forth the hearing requirements by providing in part that: "On the date and at the time and place designated in the notice the state agency shall afford any interested person or his duly authorized representative, or both, the opportunity to present statements, arguments, or contentions in writing, with or without opportunity to present the same orally. The state agency shall consider all relevant matter presented to it before adopting, amending or repealing any regulation."

Thus the aforecited statutory provisions make it clear that the director's coverage determination would be subject to the APA if the following three conditions coexist: (1) the determination is a quasi-legislative action; (2) it amounts to a "regulation" within the meaning of section 11371, subdivision (b); and (3) it is not expressly exempted by either the APA or the prevailing wage law.

In addressing these subissues, first we point out that the parties agreed (and the trial court so found) that the coverage determination in dispute was a quasi-legislative function. We are likewise persuaded that the May 26, 1977, determination of the director constituted a regulation within the purview of the law. As spelled out before, in the definition of

section 11371, subdivision (b), "regulation" includes orders or *standards of general application* which are adopted by state agencies in order to implement, interpret or make specific the law enforced by such agencies. Clearly, the coverage determination in dispute amounted to a standard of general application because it had a statewide impact and applied not only to the individual firm to which it was addressed but also to all public entities letting contracts for public works and to all employees who engaged the services of field surveying workers on public work projects. The eventuality that the director entitled his action as a "general determination" rather than a "regulation" is of no legal consequence. Whether the action of a state agency constitutes a regulation does not depend on the designation of the action, but rather on its effect and impact on the public. If the action is not only of local concern, but of statewide importance, it qualifies as a regulation despite the fact that it is called "resolutions," "guidelines," "rulings" and the like (*State Comp. Ins. Fund* v. McConnell (1956) 46 Cal.2d 330, 343 [294 P.2d 440]; see also *Davies* v. *Contractors' State License Bd.* (1978) 79 Cal. App.3d 940 [145 Cal.Rptr. 284]; *City of San Marcos* v. *California Highway Com.* (1976) 60 Cal.App.3d 383 [131 Cal.Rptr. 804]).

Moreover, the second criterion of the statutory definition of "regulation" is also present in this case. As appears from the record, the coverage determination of the director was issued for the purpose of interpreting the terms "public works" and "workman" in Labor Code sections 1720 and 1723 and to apply those interpretations to the surveying profession. In sum, since the coverage determination had statewide significance and applicability and was issued to implement, interpret and make specific the prevailing wage law, it undoubtedly qualifies as a "regulation" within the meaning of section 11371 and is subject to the APA unless specifically exempted.

This leads us to the next important issue, i.e., whether the director's action was exempted from the APA's requirements. There are three possible places where such an exemption might be found: in the organic legislation establishing the department, in the prevailing wage law, or in the APA itself.

Section 11421 exempts regulations not required to be filed with the Secretary of State under section 11380. Section 11380, subdivision (a)(1) exempts regulations which inter alia "[e]stablishes or fixes rates, prices or tariffs." While the director's wage determination of August 12, 1977, is exempt under this latter section, there is no specific exemp-

tion in section 11380 or anywhere for the director's *coverage* determination. The trial court concluded "The general determination of May 26, 1977 was a determination of the coverage of the public works law and not an order fixing rates, prices or tariffs as provided in Government Code § 11380, subdivision (a) (1)," so was not exempt.

Appellant argues that the coverage determination should be exempted from the APA requirements because it is part of the rate setting process. Labor Code section 1773 provides the method to be used by the director in determining general prevailing rates. In this determination the director shall fix the rate for each craft, classification or type of work. Thus, the determination of the classification or type of work covered is an essential step in the wage determination process and a rate cannot be fixed without such a determination. As the wage determination process is exempted from the prior hearing requirements of the APA, coverage determination, as an integral part of that process, is also exempted. There is no requirement that the director grant a hearing prior to the determination of the type of work covered.

The judgment is reversed.

Rattigan, J., and Christian, J., concurred.