[No. A059714. First Dist., Div. Two. Mar. 17, 1994.]

INDEPENDENT ROOFING CONTRACTORS OF CALIFORNIA, INC., et al., Plaintiffs and Appellants, v.
DEPARTMENT OF INDUSTRIAL RELATIONS et al., Defendants and Respondents;
PIPE TRADES COUNCIL et al., Interveners and Respondents.

348

COUNSEL

Mark R. Thierman and George P. Parisotto for Plaintiffs and Appellants.

Douglas P. Elliott for Defendants and Respondents.

Littler, Mendelson, Fastiff, Tichy & Mathiason, Sue Means and James Baker as Amici Curiae on behalf of Defendants and Respondents.

Marsha S. Berzon, McCarthy, Johnson & Miller, John F. Davis, Jr., Van Bourg, Weinberg, Roger & Rosenfeld, Blythe Mickelson, Stanton, Kay & Watson and Lawrence H. Kay for Interveners and Respondents.

OPINION

**KLINE, P. J.**—California law requires that workers on public works projects be accorded the same working conditions and wages that prevail in private industry. The California Department of Industrial Relations (Department) is charged with determining what wages are prevailing for specific

types of work at any given place and time; its determinations are binding on the parties to public construction contracts. Here, two associations of building contractors bring various constitutional challenges to the Department's decision to delete a particular wage determination. They complain that the Department's policies and the statutory scheme effectively allow the parties to private collective bargaining agreements to dictate the wages that will be paid on public projects, regardless whether those wages are actually prevailing. The trial court rejected their contentions. We affirm.

*Facts*

On October 5, 1989, the business manager of the Craft Tenders Union Local 343 of Vallejo, California, requested that the Department determine prevailing wage rates for craft tender employees. Before the request was made, there had been no such classification for prevailing wage purposes. In support of the request, Local 343 submitted a copy of its standard collective bargaining agreement. The agreement described craft tenders as unskilled or semiskilled construction workers who "tend" skilled construction crafts, or in other words, perform unskilled cleanup, material handling, and other essential but menial tasks necessary to assist skilled workers. In January 1990, in response to the Department's request, Local 343 provided additional information, including the number of workers covered in each county, a list of signatory contractors, and the names and locations of projects on which craft tenders were employed. In May 1990, based on the information submitted to it and "other available information," the Department published prevailing wage rates for the craft tender classification.

On July 5, 1990, the Northern California District Council of Laborers (Laborers) filed a petition to review the craft tender determination. The Laborers claimed the craft tender determination had been made in violation of certain provisions of the California Code of Regulations, and that the classification performed work historically performed by laborers. On July 26, the Department denied the petition, noting that the Department avoided involvement in jurisdictional disputes between crafts, and that the specific designation of classifications to be used on a particular public work was the responsibility of the awarding body, not the Department.

In January 1991, the Laborers requested reconsideration of their petition, and submitted additional information. In response to the request, the Department began an investigation, in which it conducted a survey of Northern California contractors. While the investigation was proceeding, the Department received additional requests from various employee associations that it delete the craft tender classification from its published wage determinations, and a formal petition to delete the classification from the Carpenter's Work

Preservation Fund. On August 2, 1991, in response to the petitions and other comments, the Department solicited additional comment from "interested parties" on various specific questions, including whether craft tenders as defined by the collective bargaining agreement were a distinct craft within the meaning of Labor Code section 1773. According to a declaration filed in opposition to the petition for writ of administrative mandate, the request generated a considerable quantity of correspondence.

On May 11, 1992, while the Department's investigation of the controversy was proceeding, Local 343, the craft tender local which had originally requested the new classification, informed the Department that its collective bargaining agreement had been rescinded. The letter was signed by the business agent for Local 343, and by three contractors, two of whom had been identified as signatories in the materials supporting the original petition to establish the craft tender classification. Apparently in response to that letter, the Department issued a notice to awarding bodies in which it rescinded the published wage determinations for the craft tender classification effective June 1, 1992. The notice was sent to all interested parties, with a cover letter explaining that the Department had determined to rescind the craft tender wage determination because rescission of the craft tender collective bargaining agreement had eliminated the only basis upon which the Department had initially recognized the classification. Both the notice and the letter informed recipients that they were free to file additional petitions and supporting information if they wished to reestablish the classification.

On June 12, 1992, in response to the Department's notice, appellants Independent Roofing Contractors of California, Inc., and Associated Builders and Contractors, Inc. (appellants) filed a petition for writ of mandate, naming the Department and its Director as respondents.[1] They sought an order directing the Department to set aside its decision rescinding the craft tender wage determination, a declaration that the Department's decision was void, a declaration that Labor Code section 1773 and associated administrative regulations were unconstitutional and therefore void, and assorted injunctive relief aimed at preventing the Department from relying on the provisions of collective bargaining agreements as the basis for wage determinations.[2] By stipulation, numerous employee organizations filed complaints in intervention on behalf of the respondent Department; hereafter, we refer to those organizations as "interveners."

---

[1]The California Department of Labor was also named as a respondent in the original pleadings, but was voluntarily dismissed before trial.

[2]Though appellants originally sought a variety of relief, their only challenge here is to the denial of their petition for writ of mandate. Accordingly, we limit our discussion to that question.

After conducting a hearing and reviewing the affidavits and supporting documents, the trial court found the Department's decision was within its authority under applicable statutes and regulations, and that the procedure prescribed by those statutes and regulations did not violate any constitutional provision. This appeal followed.

## Discussion

### I.

### *Introduction: The Prevailing Wage Law*

To effect public policy in favor of enforcing minimum labor standards, the conditions of employment on publicly financed construction projects are governed by California's prevailing wage law. (Lab. Code, §§ 90.5, 1720-1861; see *Lusardi Construction Co. v. Aubry* (1992) 1 Cal.4th 976, 986 [4 Cal.Rptr.2d 837, 824 P.2d 643].)[3] With certain exceptions, all workers employed on public works shall be paid the general prevailing rate of per diem wages in the locality in which the public work is performed, as determined by the Director of the Department.[4] (§ 1771.) A public entity awarding a contract for public works must obtain prevailing wage data from the Director, and must "specify those rates in its call for bids, in bid specifications, and in the contract, or alternatively, must specify in those documents that the prevailing wage rates are on file in its principal office." (*Lusardi Construction Co. v. Aubry, supra,* 1 Cal.4th at p. 986; §§ 1773, 1773.2.) The Director's determination of the prevailing wage is to be based on consideration of wage rates set by collective bargaining agreements and for federal public works in the same area, unless those rates do not "constitute the rates actually prevailing in the locality," in which case the Director is to "obtain and consider" other data from labor organizations, employers, and employer associations. (§ 1773.) If any bidder, employee representative, or awarding body desires to challenge a rate set by the Director, it may file a petition to review the determination with the Director within 20 days after the "commencement of advertising of the call for bids by the awarding body." (§ 1773.4.) Upon receiving such a petition, the Director must notify interested parties and conduct an investigation. (§ 1773.4.) Within 20 days of the filing of the petition, or after such time as may be agreed on by the awarding body, the Director, and all interested parties, the Director shall make a new determination which is final and binding on the awarding body. (§ 1773.4.)

---

[3]Unless otherwise indicated, all further statutory references are to the Labor Code.

[4]This and all further references to the "Director" are to the Director of the Department of Industrial Relations.

Though the parties occasionally characterize the Department's action as the deletion or addition of a craft category from prevailing wage schedules, no specific statute or rule explicitly provides for the deletion or addition of craft categories as such. The actual authority of the Department is to make two determinations; first, whether a particular type of worker or work is covered by the prevailing wage laws, and second, if so, what the prevailing wage for that category of worker should be. (§§ 1772, 1773; see *Winzler & Kelly* v. *Department of Industrial Relations* (1981) 121 Cal.App.3d 120, 127 [174 Cal.Rptr. 744] [review of Department's determination that surveyors were covered by prevailing wage law].) These determinations have the corollary effect of allowing awarding bodies and interested parties to specify that category of worker in calls for bids and bid proposals, while the deletion of the entire determination requires them to either use another category of worker for which there is an existing determination, or to petition the Department to redetermine the wage rate for that category of worker; it is to that corollary effect that the parties refer. However, in the following discussion, we restrict our characterization of the Department's action to that described by the statutes, namely, wage determination.

## II.

### *Standard of Review*

■ An order denying a petition for writ of mandate is appealable. (*Elmore* v. *Imperial Irrigation Dist.* (1984) 159 Cal.App.3d 185, 190-191 [205 Cal.Rptr. 433].) ■ Because the facts are undisputed, the question whether the Department's action was beyond its powers is a question of law, to which we apply the standard of independent review, though we will not disturb the trial court's implicit factual findings if those findings are supported by substantial evidence. (See *Physicians & Surgeons Laboratories, Inc.* v. *Department of Health Services* (1992) 6 Cal.App.4th 968, 981 [8 Cal.Rptr.2d 565]; *Whitfield* v. *Board of Supervisors* (1991) 227 Cal.App.3d 451, 459 [277 Cal.Rptr. 815].)[5]

---

[5]The Department argues that appellants have failed to exhaust their administrative remedy because they failed to petition the Department for reconsideration of its decision or for a new determination of prevailing wages for craft tenders. The same objection to appellant's constitutional arguments was presented and implicitly rejected in the trial court, which ruled that the Department had not "violate[d] any regulation or any statute or any constitutional provision[]." The trial court was correct. (See, e.g., *Lund* v. *California State Employees Assn.* (1990) 222 Cal.App.3d 174, 183 [271 Cal.Rptr. 425] [no exhaustion required where party brings constitutional challenge to agency's statute].) Moreover, in view of the trial court's decision to reach the merits, it would be inappropriate to bar consideration of appellant's claims here.

## III.

### *Standing*

The parties argue at some length whether appellants' property interest in the Department's wage determinations is sufficient to allow them to assert constitutional defects in the wage determination procedure in general and to the specific determination challenged in this case. We need not dwell on the question. Appellants are associations of contractors likely to bid on public works projects. Under the regulatory scheme, such associations are recognized as "interested parties," (Cal. Code Regs., tit. 8, § 16000), and as such are entitled to request a determination of coverage of particular work (Cal. Code Regs., tit. 8, § 16001, subd. (a)(1)), to appeal from such determinations (Cal. Code Regs., tit. 8, § 16002.5), to provide information to the Department which the Department must consider in making wage determinations (Cal. Code Regs., tit. 8, § 16200, subd. (e)), to petition the Department for special wage determinations (Cal. Code Regs., tit. 8, § 16202), to submit petitions for review of wage determinations (Cal. Code Regs., tit. 8, § 16302), and to participate in any hearings the Department may hold in connection with its wage and coverage determinations (Cal. Code Regs., tit. 8, § 16304.)We find that the extensive rights of participation in prevailing wage determinations granted to contractor's associations and other "interested parties" confer a sufficient interest in those proceedings to entitle such parties that have participated in a particular proceeding to the ordinary processes of judicial review of the Department's actions, including review of constitutional claims. (See, e.g., *Temescal Water Co.* v. *Dept. Public Works* (1955) 44 Cal.2d 90, 107 [280 P.2d 1] [parties who have a right to participate and have participated in administrative proceedings have a sufficient interest in those proceedings to entitle them to review].) The Department's and interveners' arguments to the contrary are based on their claim that appellants lack a sufficient property interest in any particular contract or expectation of contract to entitle them to challenge the Department's actions; however, that argument overlooks the interest in the regularity of Department proceedings which is explicitly acknowledged by statute and regulation. (*Ibid.*; and see § 1773; Cal. Code Regs., tit. 8, §§ 16000-16304.) We therefore agree with the implicit conclusion of the trial court that appellants have a sufficient interest in the determination in question to allow them to proceed.

## IV.

### Delegation of Legislative Power

Addressing the merits, appellants first argue the Department's rescission of the craft tender wage determination was an unconstitutional delegation of legislative power to private parties. We are not persuaded.

As appellants' argument assumes, the Department's authority to make prevailing wage determinations and the subsumed power to determine craft classifications is quasi-legislative. (§ 1773.5 [granting the Director authority to promulgate appropriate regulations "for the purpose of carrying out the prevailing wage provisions" of the law]; see *Pacific Legal Foundation* v. *California Coastal Com.* (1982) 33 Cal.3d 158, 168 [188 Cal.Rptr. 104, 655 P.2d 306] [guidelines interpreting Coastal Act's access provisions]; *Winzler & Kelly* v. *Department of Industrial Relations, supra,* 121 Cal.App.3d 120, 127.) Such delegations are proper. "The Legislature may, after declaring a policy and fixing a primary standard, confer upon executive or administrative officers the 'power to fill up the details' by prescribing administrative rules and regulations to promote the purposes of the legislation and to carry it into effect . . . ." (*First Industrial Loan Co.* v. *Daugherty* (1945) 26 Cal.2d 545, 549 [159 P.2d 921].) However, the Legislature's power to delegate its authority is not unlimited. To survive constitutional scrutiny, a delegation of legislative power must be accompanied by safeguards adequate to prevent an abuse of that power. (*State Bd. of Education* v. *Honig* (1993) 13 Cal.App.4th 720, 750 [16 Cal.Rptr.2d 727]; *Bayside Timber Co.* v. *Board of Supervisors* (1971) 20 Cal.App.3d 1, 11 [97 Cal.Rptr. 431].) Such safeguards are lacking where the Legislature delegates unfettered rulemaking authority to private parties possessing a pecuniary interest in the formulation and application of the rules. (See, e.g., *State Board* v. *Thrift-D-Lux Cleaners* (1953) 40 Cal.2d 436, 448 [254 P.2d 29] [delegation of price regulation to industry controlled board]; *Bayside Timber Co.* v. *Board of Supervisors, supra,* at p. 11 [delegation of formulation of forest practice rules to industry-controlled board].) Appellants claim the Department made such an unconstitutional delegation when it relied on the rescission of the craft tender collective bargaining agreement as the basis for its decision to eliminate the craft tender wage determination. We cannot agree.

First, there is nothing in the record suggesting the Department failed to exercise its legislative discretion in the decision to eliminate the wage determination for craft tenders, or that its decision was dictated by any

private party. Statute and regulation require the Department to consider the provisions of collective bargaining agreements as evidence of prevailing wages and working conditions. In particular, section 1773 requires the Department to "consider" wage rates set by "collective bargaining agreements," and rates set for "federal public works," and if those sources reflect rates which are not "actually prevailing," to seek "further data from the labor organizations and employers or employer associations involved." Here, the Department determined that absent the collective bargaining agreement, there was no longer any evidence before the Department supporting the wage determination. Where the Department has determined that the basis for a particular wage determination no longer exists, there is nothing in the statutes or rules (or indeed, in logic) which requires the Department to refrain from rescinding that determination simply because the evidence on which it acts was provided by a party with a financial interest in the determination. To the contrary, it is unlikely that any completely disinterested private party would ever present any evidence to the Department, whether positive or negative.

Second, even apart from the situation presented here,[6] the fact the Department relies on the existence or nonexistence of a collective bargaining agreement as the basis for a wage determination is not itself reason to conclude the Department has delegated its power to determine prevailing wages to the parties to that collective bargaining agreement. The statutory scheme contains express safeguards to prevent such delegation from occurring. The Department is allowed to rely on a collective bargaining agreement as a basis for a determination only where the agreement is evidence of "the rates actually prevailing in the locality." (§ 1773.) The Department must consider other information where the rates set by agreement are not actually prevailing.[7] (§ 1773.) Moreover, when the Department considers whether a particular agreement reflects a prevailing wage, applicable regulations forbid it from relying on the agreement without taking into consideration the geographical coverage of the agreement, the number of workers it covers, whether covered workers are in the area, and the wage rate for workers on federal projects. (Cal. Code Regs., tit 8, § 16200, subd. (a)(2).) The scheme does not contemplate that the Department will necessarily adopt terms agreed to by private parties; rather it authorizes the Department to rely on the terms worked out by private parties only when it reasonably determines

---

[6] It is notable that appellants failed to challenge the initial wage determination for craft tenders, despite the fact that so far as our record makes it clear, it appears the original determination was made only on the basis of the collective bargaining agreement.

[7] In addition, the Department is to consider the rates set for federal public works, which in turn are generally based on statistical surveys by the United States Department of Labor. (40 U.S.C. § 276a; see 29 C.F.R. § 4.51 et seq.)

that their agreement accurately reflects market forces at work in the geographical area in question. Thus, absent some showing of an actual failure to exercise such discretion, the Department's decision to rely on the existence or nonexistence of a collective bargaining agreement as the basis for a wage determination does not establish an improper delegation of its authority to private parties.

Finally, we observe that the requirement that the Department consider collective bargaining agreements as primary evidence of prevailing wage rates is consistent with the declared public policy of this state in favor of collective bargaining and with the purpose of prevailing wage statutes generally. Our Legislature has endorsed collective bargaining as the means by which employees can stand on an equal footing with employers, exercise "actual liberty of contract," and obtain "acceptable terms and conditions of employment." (§ 923 [declaring public policy in favor of concerted action]; see *Petri Cleaners, Inc.* v. *Automotive Employees, etc., Local No. 88* (1960) 53 Cal.2d 455, 470 [2 Cal.Rptr. 470, 349 P.2d 76].) Prevailing wage laws are based on the corollary and complementary premise that government contractors should not be allowed to circumvent locally prevailing labor market conditions by importing cheap labor from other areas. (See, e.g., *Universities Research Assn.* v. *Coutu* (1981) 450 U.S. 754, 774 [67 L.Ed.2d 662, 677, 101 S.Ct. 1451] [purpose of federal prevailing wage legislation to combat use of " 'itinerant, cheap, bootleg labor' "].) Where by collective action workers have succeeded in establishing a prevailing market wage for their services, the purpose of the California prevailing wage law is well served by allowing the Department to rely on collective contracts as the basis for determining the pay rates for workers employed on public projects.

*General Elec.* v. *New York State Dept. of Labor* (2d Cir. 1991) 936 F.2d 1448 (*General Electric*), on which appellants rely, is not to the contrary. In *General Electric*, the trial court had granted summary judgment against the plaintiff, who had claimed New York's prevailing wage statute either mandated an unconstitutional delegation of power on its face, or that the state's wage determination practice had in fact resulted in such a delegation. The statute in question fixed the prevailing wage rate " 'by virtue of collective bargaining agreements between bona fide labor organizations and employers of the private sector, performing public or private work provided that said employers employ at least thirty per centum of workers, laborers or mechanics in the same trade or occupation in the locality where the work being performed.' " (*General Electric, supra*, at p. 1450.) After reciting the general rule that absent appropriate safeguards, legislative power to determine property rights may not be delegated to private parties who are themselves interested in such rights, the court determined that because the statute did not

"compel the state to accept unquestionably whatever rates [were] furnished to it," it was not facially invalid as an outright delegation of power. (*Id.*, at p. 1456.)

However, though the *General Electric* court found no facial defect in the New York statute, it determined there were unresolved factual questions whether the wage determination was the result of collusive bargaining, and whether the state as a matter of policy simply adopted the rates set by collective bargaining without further inquiry; accordingly, it remanded for further proceedings. (936 F.2d at p. 1458.) Appellants argue the principles espoused in *General Electric* force the conclusion that the Department's reliance on the rescission of the collective bargaining agreement was an unconstitutional delegation of power. We are not persuaded.

First and most important, there is no inconsistency between the principles we apply here and those applied in *General Electric*. The court in *General Electric* concluded the New York statute was not facially invalid merely because it allowed prevailing wages to be set based on bona fide collective bargaining agreements, a conclusion which implicitly acknowledges that collective bargaining agreements are often the best evidence of prevailing wages in a given market. Second, unlike *General Electric*, this case does not arise out of a summary judgment. As we have discussed, the record does not establish that the Department's act was a reflexive response to the rescission of the craft tenders' collective bargaining agreement, nor that the Department as a matter of policy makes its wage determinations on that basis. Finally, California's statutory scheme bears no resemblance to that considered in *General Electric*. As we have discussed, the statutes and regulations governing wage determinations expressly require the Department to conduct a critical review of collective bargaining agreements, and to consider "other information" "where such rates do not constitute the rates actually prevailing." (§ 1773.) The lack of similar express safeguards apparently led the court in *General Electric* to conclude the statute could lead to improper delegation where the bargaining agreements in question were collusive; accordingly, that court remanded for further proceedings to discover whether collusion had in fact occurred. (*General Electric, supra,* 936 F.2d at pp. 1457-1458.) This case brings no such issue before us, both because the California scheme contains adequate safeguards, and because the record supports the trial court's implicit conclusion that no collusion was involved.

In sum, the record supports the trial court's conclusion that the decision of the Department was taken on the evidence (or lack of evidence) before it, and was not the outright delegation of rulemaking power to financially interested private parties that was condemned in *State Board* v. *Thrift-D-Lux*

*Cleaners, supra,* 40 Cal.2d at page 448. We therefore conclude that appellants' challenge to the judgment based on a claimed delegation of legislative power must be rejected.

V.

### Violation of Statutory Mandate

■ Appellants next claim the deletion of the craft tender classification was arbitrary and capricious because the Department did not consider empirical data, wage surveys, or wage rate factors before making its decision. In support of that claim, appellants argue that all the same procedures that are required of the Department when it makes a wage determination should be required before it deletes one. Though the statutes and regulations do not prescribe a specific procedure for modification or rescission of existing wage determinations, we agree that the Department may not modify or rescind an existing wage determination without exercising discretion in the same manner required for an initial determination. However, for the same reasons we found no unconstitutional delegation of legislative power, we do not find the Department's action was arbitrary or capricious.

The statute which applies to modification of existing wage determinations provides that where the Director finds there has been a change in prevailing wage rates, ". . . he shall make such change available to the awarding body and his determination shall be final." (§ 1773.6.) The applicable regulation (Cal. Code Regs., tit. 8, § 16204) requires that all wage determinations "ordinarily show an expiration date," and remain in effect until that date or until "modified, corrected, rescinded or superseded by the Director." Where the modification, correction, or rescission of a determination is based on information contained in collective bargaining agreements, the Director's action shall not be effective as to "any projects as in which a call for bids takes place less than 30 days after the filing of the agreement." (*Ibid.*)[8] The statute and regulation just cited provide the only statutory or regulatory mention of the Department's power to modify or rescind existing and unexpired determinations.

Despite the lack of explicit statutory or regulatory prescription, we believe it is clear the Department may not modify or rescind an existing determination without considering the same kinds of factors it is required to consider

---

[8]The latter provision is meant to conform the regulation to the requirement of section 1773.1 that collective bargaining agreements may not be considered as the basis for a determination unless filed 30 days prior to a call for bids.

in making its initial determination. It would be absurd to conclude that the standards the Department must apply when making wage determinations may be ignored in subsequent decisions to modify or rescind the same determinations. Such an interpretation would effectively allow the Department carte blanche to modify or rescind wage determinations at will, a result clearly contrary to the statutorily prescribed method of determining prevailing wage rates. (§ 1773.) This view is supported by the regulatory provision for modification of a wage determination, which assumes that such modifications may be based on newly filed collective bargaining agreements, implying that the Department is to rely on such agreements when it considers modifying an existing determination. (Cal. Code Regs., tit. 8, § 16204.) Accordingly, we conclude that before it may modify, correct, rescind, or supersede an existing and unexpired wage determination, the Department must consider the same factors it is required to consider when it makes its initial determination.[9] However, our conclusion does not benefit appellants.

As we have noted, the Department acted to rescind the craft tenders wage determination because the only evidence that there was a prevailing wage for craft tenders was eliminated when their collective bargaining agreement was rescinded. The Department did not violate its duty to consider other evidence of a prevailing wage for craft tenders because, so far as our record reveals, no contrary evidence was presented or existed. Though the Department must not determine a prevailing wage before considering relevant collective bargaining agreements, prevailing wages on federal projects, and other pertinent information, nothing in the statutory scheme prevents it from determining that the information provided to it is insufficient to support a wage determination, or that new information has eliminated the basis for an existing determination. Appellants' claim that the Department's act was arbitrary for failure to discover a basis for a different determination is therefore without merit.

## VI.

### *Due Process*

■ Appellants last contend that the Department deprived them of due process of law by failing to give them notice and an opportunity to be heard before rescinding the craft tender determination. The claim merits only brief discussion. As we have earlier explained, the authority of the Department to

---

[9]We hold only that the Department must base *all* its wage determinations on the kinds of evidence mandated by statute. Nothing in our holding mandates any specific procedure by which the Department is to act; those procedures are specified by statute and regulation.

promulgate, modify, correct, rescind, or correct wage determinations is a quasi-legislative rulemaking power. Because wage determinations set "rates" within the meaning of Government Code section 11343, subdivision (a), such determinations are exempt from the notice and hearing provisions of the Administrative Procedure Act. (See Gov. Code, §§ 11346.1-11347.5; *Winzler & Kelly* v. *Department of Industrial Relations, supra,* 121 Cal.App.3d at pp. 127-128 [construing predecessor statutes].) Moreover, because the Department exercises delegated quasi-legislative power, there is no constitutional requirement that the Department hold hearings or give notice before making wage determinations. (See, e.g., *Wood* v. *Public Utilities Commission* (1971) 4 Cal.3d 288, 292 [93 Cal.Rptr. 455, 481 P.2d 823]; and see *United States* v. *Florida East Coast R. Co.* (1973) 410 U.S. 224, 244-245 [35 L.Ed.2d 223, 238-239, 93 S.Ct. 810]; Davis & Pierce, Administrative Law (3d ed. 1994) § 7.8, pp. 346-350.) Accordingly, we reject appellants' claim they were deprived of due process of law by the manner in which the Department acted.

### Disposition

The judgment is affirmed. Respondents shall be awarded their costs on appeal.

Smith, J., and Phelan, J., concurred.