[No. A069548. First Dist., Div. Five. Jan. 29, 1996.]

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCALS 11, 302, 340, 441, 569, 595, Plaintiff and Appellant, v. LLOYD W. AUBRY, JR., as Director, etc., Defendant and Respondent.

## COUNSEL

Altshuler, Berzon, Nussbaum, Berzon & Rubin, Peter D. Nussbaum and Scott A. Kronland for Plaintiff and Appellant.

John M. Rea, Vanessa L. Holton and Frank Nelson Adkins for Defendant and Respondent.

## OPINION

**PETERSON, P. J.**—Appellant Unions contend the Director of the Department of Industrial Relations of the State of California (Director) committed a prejudicial abuse of discretion when he determined that certain sums deducted from workers' wages and repaid to employers, as wage rebates, should not be counted in calculating the "actually prevailing" wage rates for specified jobs, under the provisions of Labor Code section 1773 (section 1773) and title 8, California Code of Regulations, section 16000 (regulation 16000).

We find no such abuse of discretion, and affirm the trial court's order which denied the Unions' petition for a writ of mandate. The Director acted properly, and well within his lawful discretion, when he determined the sums which workers are required to pay back to employers as wage rebates should not be counted when calculating the true wage rate "actually prevailing" for a given job classification under the provisions of section 1773.

## I. FACTS AND PROCEDURAL HISTORY

During the period from 1992 to 1994, the Director conducted an investigation of certain alleged wage rebates or "Job Targeting" practices by unions and union contractors. Such job targeting practices were intended to aid contractors employing union employees to obtain public and private construction contracts. It was alleged that these rebate practices distorted the

bidding on public works in California which are subject to prevailing wage laws. The investigation found that unions and union contractors would agree among themselves that a portion of their workers' wages paid pursuant to the terms of collective bargaining agreements would be paid back to unionized employers, utilizing a mandatory dues assessment scheme which funneled a specified portion of workers' wages through the union and back to the employer.

The effect of these wage rebates was to make it appear that a higher wage rate was being paid to workers than they, in fact, received. This distorted the Director's attempts to enforce the prevailing wage laws on public works projects, because nonunion contractors bidding for public works were being required to pay a higher rate to their workers than union workers actually received in the private marketplace.

Since the purpose of the prevailing wage laws for public works projects, as stated in section 1773, is to ensure that workers on these projects receive the wage rate "actually prevailing" for similar work on private jobs, the Director concluded he should disregard the amount of any wages thus rebated to employers in calculating the wages actually prevailing. For example, if a union had a labor contract calling for wages of $20 per hour on certain electrical work, but the union assessed its members 2 percent of their wages and returned these wages to employers, then the "actually prevailing" wage rate would be $19.60 rather than the $20 rate which existed on paper. Therefore, workers on public works jobs, whether union or nonunion, could be paid the $19.60 rate which was actually prevailing, rather than the nominal $20 rate.

In 1995, appellant Unions filed a petition for a writ of mandate in the superior court, contending the Director's determination should be set aside as contrary to law. After considering the evidence presented and hearing argument, the Honorable Stuart R. Pollak issued a written opinion ordering the denial of the requested relief. Appellant Unions filed a timely appeal.

## II. Discussion

We affirm the trial court's order denying the petition for a writ of mandate. The Director acted properly in concluding these mandatory wage rebates, paid back to employers pursuant to union-mandate job targeting programs, should not be counted when calculating the wage rate "actually prevailing" for work under the terms of section 1773.

In reviewing the trial court's order upholding the Director's decision to calculate the "actually prevailing" wage rates under the terms of section

1773, we exercise independent review of issues of law, but uphold the trial court's implicit factual findings if they are supported by substantial evidence. (*Independent Roofing Contractors* v. *Department of Industrial Relations* (1994) 23 Cal.App.4th 345, 352 [28 Cal.Rptr.2d 550] (*Roofing*).) We will only overturn the Director's quasi-legislative decision if it is "arbitrary or capricious" or in conflict with the clear terms of the Director's statutory mandate. (*Id.* at pp. 358-359; see also *Winzler & Kelly* v. *Department of Industrial Relations* (1981) 121 Cal.App.3d 120, 124-125 [174 Cal.Rptr. 744].)

Section 1773 provides in pertinent part as follows: "The body awarding any contract for public work . . . shall obtain the general prevailing rate of per diem wages . . . from the [Director]. . . . [¶] In determining such rates, the [Director] shall ascertain and consider the applicable wage rates established by collective bargaining agreements and such rates as may have been predetermined for federal public works, within the locality and in the nearest labor market area. *Where such rates do not constitute the rates actually prevailing in the locality, the [Director] shall obtain and consider further data from the labor organizations and employers or employer associations concerned, including the recognized collective bargaining representatives for the particular craft, classification or type of work involved.* The rate fixed for each craft, classification or type of work shall be not less than the prevailing rate paid in such craft, classification or type of work." (Italics added.)

In compliance with this statutory mandate, the Director conducted an investigation which revealed that the wage rates specified in certain collective bargaining agreements are not the wage rates "actually prevailing" because some percentage of the wages paid to workers is returned to unionized employers utilizing the union's "Job Targeting Program" as a funnel. Appellant Unions conceded these wage rebates existed in the form of mandatory dues assessments against the stated wage rates paid to workers, the proceeds of which are returned to union contractors; but the Unions defended this practice as a means of securing work without specifying lower wage rates in labor contracts. The Director determined this rationale supported his decision to exclude the amounts of "Job Targeting" wage rebates from his calculations of the wage rates "actually prevailing" under section 1773.

■ The Director acted properly. Section 1773 does not simply specify the nominal wage rate set forth in a labor contract or collective bargaining agreement as the prevailing wage rate. Rather, section 1773 recognizes that the rate specified in a collective bargaining agreement may not be the wage

rate "actually prevailing" for the work, and requires the Director to ascertain the "actually prevailing" wage rates.

The Director "*must* consider other information where the rates set by agreement are not actually prevailing." (*Roofing*, *supra*, 23 Cal.App.4th at p. 355, italics added, fn. omitted.) After conducting a factual investigation and considering the relevant information, the Director properly determined that wage rebates mandatorily deducted from workers' wages and returned to employers should not be counted in determining the wage rate actually prevailing under section 1773. This was not arbitrary or capricious, and was well within the range of the Director's quasi-legislative discretion under section 1773. (See *Roofing*, *supra*, 23 Cal.App.4th at pp. 358-359.) The trial court properly so ruled.

A number of recent federal decisions in analogous contexts also support the Director's and trial court's decisions in this regard. In *Building and Const. Trades Dept., AFL-CIO v. Reich* (D.C. Cir. 1994) 40 F.3d 1275, 1280 [309 App.D.C. 244] (*Reich*), the District of Columbia Circuit Court of Appeals upheld the decision of the federal Secretary of Labor who had determined a similar job targeting program (JTP) deduction scheme from workers' wages constituted illegal kickbacks for purposes of federal public works projects under the federal Davis-Bacon Act (40 U.S.C. § 276a et seq.): "JTP deductions from wages of mechanics and laborers on Davis-Bacon projects have the effect of artificially increasing the prevailing local rate wage, which must be met by non-union employers, by the inclusion in the local average of the pre-deduction wages paid by the unionized employers before the deduction. The union employees then suffer a reduction in their wages (potentially, though not always, below the prevailing wages) through deductions precluded by the language of the Act." The *Reich* court held the decision of the federal Secretary of Labor to preclude such schemes for artificially elevating the prevailing wage rate was "rational and based upon a reasonable interpretation of the statute." (40 F.3d at p. 1280.) The same is true here.

More recently, on October 20, 1995, the Ninth Circuit Court of Appeals also so ruled. In *International Broth. of Elec. Workers v. Brock* (9th Cir. 1995) 68 F.3d 1194, 1202-1203 (*Brock*), the Ninth Circuit held that the very job targeting funds in issue here—funds deducted from the paychecks of unionized electrical workers who are members of the International Brotherhood of Electrical Workers, and then funneled through the union back to unionized employers—were illegal under the federal Davis-Bacon Act, and did not constitute valid union membership dues. The same is true here.

■ Appellant Unions, however, present a highly technical argument that the Director's action violated the provisions of a certain regulation he had previously promulgated, regulation 16000. We reject this argument. Regulation 16000 simply provides definitions of a large number of terms, including "General Prevailing Rate of Per Diem Wages." After stating that the defined term *includes* numerous employer payments not directly relevant here, the definition also states that the term *excludes* employer payments for: "(1) Job related expenses other than travel time and subsistence pay; [¶] (2) Contract administration, operation of hiring halls, grievance processing, or similar purposes . . . ; [¶] (3) Union, organizational, professional or other dues except as they may be included in and withheld from the basic taxable hourly wage rate; [¶] (4) Industry or trade promotion; [¶] (5) Political contributions or activities; [¶] (6) Any benefit to employees . . . where the contractor or subcontractor is required by Federal, State, or local law to provide such benefit; or [¶] (7) Such other payments as the Director may determine to exclude." (Reg. 16000, subd. (b).)

The Director did not actually decide whether the job targeting wage rebates in question here could properly be excluded under regulation 16000, subdivision (b)(3) or (b)(4), because he reasoned that such a decision might raise questions of preemption under federal law,[1] and because neither of these subdivisions was a precise fit for the payments in issue. However, the Director did decide that these payments could be excluded under subdivision (b)(7) quoted above, which allows the Director to exclude "Such other payments as the Director may determine to exclude." The Unions, by contrast, argue their job targeting assessments qualify under subdivision (b)(3) quoted above, which excludes union dues "except as they may be included in and withheld from the basic taxable hourly wage rate."

It is well established that we must accord substantial deference to an administrative body's interpretation of its own specialized regulations, especially where as here the Director is exercising a quasi-legislative function delegated to him by the Legislature pursuant to the broad mandate of section 1773, which requires him to determine the wage rate "actually prevailing" in the local community. (See *Lusardi Construction Co.* v. *Aubry* (1992) 1 Cal.4th 976, 987-989 [4 Cal.Rptr.2d 837, 824 P.2d 643] (*Lusardi*) [The Director has authority to enforce the prevailing wage laws by regulations or administrative actions consistent with the statutory purpose.]; *Roofing, supra,* 23 Cal.App.4th at pp. 358-359; cf. also *Ruth* v. *Kizer* (1992) 8 Cal.App.4th 380, 387-388 [10 Cal.Rptr.2d 274]; *Cole* v. *City of Oakland*

---

[1] We do not reach any issues arising solely under federal law, such as federal preemption issues, because they have not been briefed and are not properly before us here.

*Residential Rent Arbitration Bd.* (1992) 3 Cal.App.4th 693, 697-698 [4 Cal.Rptr.2d 593].)

Under regulation 16000, the Director may choose to exclude any "other payments" (subd. (b)(7)) from employers if their inclusion would be inconsistent with the statutory purpose of ascertaining the wage rate which is "actually prevailing" for purposes of section 1773. The Director properly concluded the job targeting wage rebates in issue here were "other payments" which did not reflect a wage rate "actually prevailing" under section 1773. A contrary conclusion was not required merely because subdivision (b)(3) of regulation 16000, in stating *another exclusion* separate from subdivision (b)(7), expressly excludes union dues, and then excludes from the scope of *this* exclusion those union dues which are withheld from the basic taxable wage rate. An exclusion from the scope of one exclusion does not trump another separate applicable exclusion. Further, if regulation 16000 did require such a result as the Unions urge, it would be invalid as in conflict with the statutory mandate of section 1773, which requires that the Director not simply accept a rate stated in a collective bargaining agreement at face value, but also determine whether the rate in question is "actually prevailing" before authorizing it. (See *Roofing, supra,* 23 Cal.App.4th at p. 355; cf. also *Littoral Development Co.* v. *San Francisco Bay Conservation etc. Com.* (1994) 24 Cal.App.4th 1050, 1063 [29 Cal.Rptr.2d 518] (*Littoral*).)[2]

When viewed in light of the statutory objectives, appellants' argument based upon subdivision (b)(3) of regulation 16000 must fail. The statute (section 1773) imposes upon the Director the overriding duty to determine whether a given wage rate is "actually prevailing" (*Roofing, supra,* 23 Cal.App.4th at p. 355); not simply whether it is " 'general[ly] prevailing' " and designated as "Union . . . dues" by labor and management, which is the regulatory definition appellants rely upon by quoting out of context from subdivision (b)(3) of regulation 16000. Subdivision (b)(3) of regulation 16000 does not speak precisely to the issue of these payments, which

---

[2]Appellant Unions contend the trial court supplied a new rational basis for the Director's interpretation of these regulations which was not relied upon by the Director. However, when critically viewed, there is no meaningful inconsistency at all between the Director's rationale and that of the trial court. Just as the Director reasoned that the job targeting assessments constituted excludable "other payments" and not true union dues, so did the trial court. The trial court did not arrogate to itself the Director's broad discretion in implementing the statutory mandate here, and neither may we. (See *California State Auto. Assn. Inter-Ins. Bureau* v. *Garamendi* (1992) 6 Cal.App.4th 1409, 1422-1423 [8 Cal.Rptr.2d 366].)

apparently constitute a recent innovation and were not within the contemplation of the regulatory definition under subdivision (b)(3).[3] Regulation 16000 in general and subdivision (b)(3) in particular provide definitional guidance only in determining the precise exclusions from a " 'general[ly] prevailing' " wage rate *after* this rate is determined to be "actually prevailing" for purposes of section 1773. The Director had not previously promulgated a definition under regulation 16000 precisely defining the relevant term here, which is the "*actually* prevailing" wage rate. (§ 1773, italics added.) The proper legal definition of this term can only be determined as a legal issue, by interpretation of the statute in which it occurs (section 1773) in light of the relevant case law. (*Roofing, supra*, 23 Cal.App.4th at p. 355.) The Director ultimately reached the proper legal definition, by recognizing that the payments in question here are not actually received by workers and are repaid to employers; their inclusion in the "actually prevailing" wage rate would, therefore, constitute an improper statistical artifice. Despite appellants' suggestion that. a remand for further proceedings would be helpful, it is clear that a remand for further clarification of the issues under the terms of subdivision (b)(3) of regulation 16000 or other internal administrative proceedings would be unnecessary and futile here. The issue here is a legal one under section 1773, which imposes upon the Director the ultimate statutory duty of determining, on an administrative basis, whether a given wage rate is "actually prevailing." (*Roofing, supra*, 23 Cal.App.4th at p. 355; cf. *Littoral, supra*, 24 Cal.App.4th at p. 1063.) The Director certainly has not shown any inclination to reach any other conclusion on remand, and would not have statutory discretion under section 1773 to reach any other conclusion; the issue is simply a legal one which would return to us within a few months in any event. The Director's decision was not a prejudicial abuse of discretion and was within the proper scope of his quasi-legislative discretion. (See *Lusardi, supra*, 1 Cal.4th at pp. 987-989; *Roofing, supra*, 23 Cal.App.4th at pp. 358-359.)

We find no infirmity in the Director's conclusion that the "other payments" in issue here, which move in a circle from employers to unions and back to employers, without remaining in the paychecks of workers, are not part of the wage rates "actually prevailing" for purposes of section 1773. For the same reason the assessments in question here did not constitute actual union dues for purposes of federal law in *Brock, supra*, they did not

---

[3]Apparently the definitional statement provided in subdivision (b)(3) dates from an earlier era, when the relations between unions and unionized companies were generally more adversarial. Subdivision (b)(3) does not mention the precise payments in issue here, and is not designed to aid in determining whether a rate which exists on paper is "actually prevailing" as required by the statute and by *Roofing, supra*, 23 Cal.App.4th at page 355.

constitute true union dues here for purposes of state law.[4] The payments in question did not go to the union for traditional union purposes, such as supporting the health and welfare of members, funding union operations, or creating a strike fund. Instead they were rerouted or refunded to employers, with the union simply acting as a funnel for the payments. (*Brock, supra,* 68 F.3d at pp. 1202-1203 and fns. 6 & 7.) Under the analogous federal decisions in *Reich* and *Brock*, we conclude the Director acted properly in characterizing these other payments as "other payments" rather than as true union dues for the purposes of regulation 16000.

III. DISPOSITION

The order denying the petition for writ of mandate is affirmed.

King, J., and Haning, J., concurred.

---

[4]While we recognize there may be minor differences between federal and state law relating to the payments in issue here, the most salient feature of both the federal and state regulatory schemes is the recognition that these payments are not union "dues" and would have a distorting effect on the prevailing wage laws if included in the wage rates "actually prevailing." (See § 1773; cf. *Reich, supra,* 40 F.3d at pp. 1280-1281.)

TO EXPOSE ADHESIVE REMOVE LINER

TO EXPOSE ADHESIVE REMOVE LINER

TO EXPOSE ADHESIVE REMOVE LINER

TO EXPOSE ADHESIVE REMOVE LINER

REMOVE LINER

Please remove the protective strip at the left and attach this pamphlet to the blank page following page 1641 in 41 Cal.App. 4th.

This pamphlet contains pages 1832 – 1857, which were inadvertently omitted from the bound volume.