BILL LOCKYER Attorney General ANTHONY M. SUMMERS Deputy Attorney General
THE HONORABLE MARSHALL S. RUDOLPH, COUNTY COUNSEL, COUNTY OF MONO, has requested an opinion on the following question:
Where a private contractor operates a solid waste transfer station for a county, does the prevailing wage law apply to the contractor's employees who (1) collect fees from trash collection companies and others for unloading trash into the station's containers, (2) monitor the unloading to prevent the placement of hazardous materials into the containers, and (3) periodically transport the containers to a county operated landfill?
 CONCLUSION
Where a private contractor operates a solid waste transfer station for a county, the prevailing wage law does not apply to the contractor's employees who (1) collect fees from trash collection companies and others for unloading trash into the station's containers, (2) monitor the unloading to prevent the placement of hazardous materials into the containers, and (3) periodically transport the containers to a county operated landfill.
 ANALYSIS
The Legislature requires "prevailing wages" to be paid to those who are employed on "public works" that are performed by a private contractor and paid for in whole or in part with public funds. (Lab. Code, §§1720-1780)[1] "The overall purpose of the prevailing wage law is to protect and benefit employees on public works projects." (Lusardi Construction Co. v. Aubry (1992) 1 Cal.4th 976, 985; see generally Universities Research Assn. v. Coutu (1981) 450 U.S. 754, 774; People v. Hwang (1994) 25 Cal.App.4th 1168, 1177; Independent Roofing Contractors v. Department of Industrial Relations (1994) 23 Cal.App.4th 345, 356.) We are asked whether the prevailing wage law is applicable to employees of a private contractor who operates a solid waste transfer station for a county. We conclude that the prevailing wage law is inapplicable in the circumstances presented.
The transfer station in question consists of a slab of concrete with partial walls and a roof. Located on the slab are movable containers. A ramp allows trucks and other vehicles to be driven next to the top of the containers for the unloading of trash. The private contractor's employees (1) collect fees from trash collection companies and others to unload the trash into the containers, (2) monitor the unloading so that hazardous materials are not placed into the containers, and (3) transport the containers to a county operated landfill when they are full.
The statutes relevant to our inquiry are sections 1720, 1720.3, and 1771. Section 1720 provides:
"As used in this chapter, `public works' means:
 "(a) Construction, alteration, demolition, or repair work done under contract and paid for in whole or in part out of public funds. . . .
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."
Section 1720.3 states:
 "`[P]ublic works' also means the hauling of refuse from a public works site to an outside disposal location, with respect to contracts involving any state agency, including the California State University and the University of California, or any political subdivision of the state."
Section 1771 provides:
 "Except for public works projects of one thousand dollars ($1,000) or less, not less than the general prevailing rate of per diem wages for work of a similar character in the locality in which the public work is performed, and not less than the general prevailing rate of per diem wages for holiday and overtime work fixed as provided in this chapter, shall be paid to all workers employed on public works.
 "This section is applicable only to work performed under contract, and is not applicable to work carried out by a public agency with its own forces. This section is applicable to contracts let for maintenance work."
The prevailing wage law is thus applicable to employees of those who contract with a public agency for the performance of "public works." (§ 1771.) Here, we are not concerned with the construction of the solid waste transfer station. Rather, we are asked whether the operation of the transfer station under a contract with the county would require the contractor's employees to be paid prevailing wages. The answer to that question depends upon whether (1) collecting unloading fees, (2) monitoring the unloading, and (3) periodically transporting the containers to a county landfill constitute the performance of "public works."
We have previously determined that the prevailing wage law applies to employees of a contractor who operates a county landfill where the land surface is altered (§ 1720, subd. (a)) by the employees in the course of their work. (64 Ops.Cal.Atty.Gen. 234, 236 (1981) ["In our view, the operation constitutes an `alteration' of the land surface"].) In the present situation, in contrast, the surface of the land is not subject to alteration by the employees of the contractor in the performance of their duties at the transfer station.
We find nothing in section 1720 that would make the operation of the transfer station (collecting fees, monitoring unloading, and transporting the containers to a landfill) the performance of "public works." There is no "[c]onstruction, alteration, demolition, or repair work" being performed by the contractor's employees. Instead, these are services that are undertaken after any construction work has been completed at the site. (See McIntosh v. Aubry (1993) 14 Cal.App.4th 1576,1586-1587; International Brotherhood of Electrical Workers v. Board of Harbor Commissioners (1977) 68 Cal.App.3d 556, 562.) We are to construe statutes so as to give the words "the meaning they bear in ordinary use. [Citations.]" (Lungren v. Deukmejian (1988) 45 Cal.3d 727, 735; accord, Wilcox v. Birtwhistle (1999) 21 Cal.4th 973, 977.) The provisions of section 1720, giving the words their ordinary meanings, have no application in the present circumstances.
Nor do we find section 1720.3 to be applicable. That statute deals with hauling refuse to a disposal location "from a public works site." The apparent intent of the Legislature in enacting section 1720.3
was to include within the definition of "public works" the hauling of any refuse that was part of the construction project. (See, e.g., O.G. Sansone Co. v. Department of Transportation (1976) 55 Cal.App.3d 434.) In the legislative history of section 1720.3's most recent amendment (Stats. 1999, ch. 220, § 1), the committee reports specifically refer to construction site refuse. For example, both the report of the Senate Rules Committee dated February 13, 1999, and the report of the Senate Committee on Industrial Relations for its hearing on June 23, 1999, contain statements that the statute was intended to require the payment of "prevailing wages on public works projects for the removal of refuse from the construction site" so that "haulers of refuse, trucked off the construction site, are subject to prevailing wage laws." In California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist. (1997)14 Cal.4th 627, 646, the Supreme Court observed: "Committee reports are often useful in determining the Legislature's intent. [Citation.]" Here, the trash transported to the county landfill is not the result of any "[c]onstruction, alteration, demolition, or repair work" (§ 1720, subd. (a)) at the transfer station. Hence, section 1720.3 is inapplicable to our facts.
Finally, we reject the suggestion that the services rendered by the contractor's employees at the transfer station are those involving "contracts let for maintenance work." (§ 1771.) As found in Clay v. City of Los Angeles (1971) 21 Cal.App.3d 577, 585-586, "The phrase `to maintain' as applied to tangible property, has generally the meaning of `upkeep and repair.' [Citations.]" The Legislature has recognized the distinction between "operation" work and "maintenance" work in the prevailing wage law. (See, e.g., §§ 1720, subds. (b), (d),1771.) Here, the contractor's employees collect fees, monitor the unloading for the absence of hazardous materials, and transport the containers to a county landfill when they are full. Such services do not involve maintenance, upkeep, or repair as those terms are normally understood to mean.
No other statute requires our examination. We thus conclude that where a private contractor operates a solid waste transfer station for a county, the prevailing wage law does not apply to the contractor's employees who (1) collect fees from trash collection companies and others for unloading trash into the station's containers, (2) monitor the unloading to prevent the placement of hazardous materials into the containers, and (3) periodically transport the containers to a county operated landfill.
[1] Further references to the Labor Code will be by section number only.